RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0158p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JONES BROTHERS, INC.,

*Petitioner*,

*v.*

No. 17-3483

SECRETARY OF LABOR, MINE SAFETY AND HEALTH
ADMINISTRATION; FEDERAL MINE SAFETY AND
HEALTH REVIEW COMMISSION,

*Respondents*.

───────────────

Appeal from the Federal Mine Safety and Health Review Commission;
Nos. SE 2016-218; SE 2016-219; SE 2016-246.

Argued:  April 26, 2018

Decided and Filed:  July 31, 2018

Before:  GUY, SUTTON, and COOK, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Noelle Holladay True, RAJKOVICH, WILLIAMS, KILPATRICK & TRUE,
PLLC, Lexington, Kentucky, R. Eddie Wayland, KING & BALLOW, Nashville, Tennessee, for
Petitioner.  Cheryl C. Blair-Kijewski, UNITED STATES DEPARTMENT OF LABOR,
Arlington, Virginia, Joshua M. Salzman, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondents.  **ON BRIEF:**  Noelle Holladay True, RAJKOVICH,
WILLIAMS, KILPATRICK & TRUE, PLLC, Lexington, Kentucky, R. Eddie Wayland, Michael
D. Oesterle, Laura M. Mallory, Benjamin S. Morrell, KING & BALLOW, Nashville, Tennessee,
for Petitioner.  Cheryl C. Blair-Kijewski, Ali A. Beydoun, UNITED STATES DEPARTMENT
OF LABOR, Arlington, Virginia, for Respondents.

———————————————

**OPINION**

———————————————

SUTTON, Circuit Judge.    The Tennessee Department of Transportation hired Jones Brothers to repair a portion of a state highway in Tennessee.  The company drilled and blasted a pit less than a mile from the highway, extracting thousands of tons of graded solid rock to fill the collapsed bed that previously supported the highway.    The Mine Safety and Health Administration imposed a few thousand dollars in civil penalties on Jones Brothers for failing to comply with safety requirements established by the agency.  An administrative law judge from the Federal Mine Safety and Health Review Commission upheld the penalties, and the Commission affirmed.    Because the administrative law judge was an inferior officer of the United States, and because she was not appointed by the President, a court of law, or the head of a department, as the Constitution demands, we vacate the Commission's decision and remand for fresh proceedings.

I.

In early 2015, the Tennessee Department of Transportation contracted with Jones Brothers to repair a portion of State Route 141 in DeKalb County, Tennessee, after a portion of the highway slid into the Coney Fork River.  Tennessee agreed to pay the company $14.25 per ton for 68,615 tons of graded solid rock.

By August, the company had identified a site to supply rock to re-fill the bed of the road.  The site was within a mile of the road.  The company cleared the trees, brush, and dirt from the site and flattened the land.  Then it excavated rock from the site by drilling and blasting the area.  Jones Brothers used a "slotted bucket" to separate dirt and other small materials from the rock.  A.R. at 204–05.  The company loaded the final product onto trucks and hauled it along a closed public road to the repair area.

In April 2016, Danny Williams, an inspector with the Mine Safety and Health Administration, visited the site.  He identified several failings:  that the company did not notify the Administration before starting the operation, did not maintain proper safety equipment, and

did not train its employees properly.  He issued nine citations and imposed $2,940 in civil penalties.

Jones Brothers challenged the Mine Safety and Health Administration's power to issue the citations before the Federal Mine Safety and Health Review Commission, an independent agency responsible for reviewing the Administration's actions.  *See* 30 U.S.C. § 823. A Commission administrative law judge rejected the argument on the ground that the site was "a coal or other mine" under the Administration's jurisdiction.  *Id.* § 803.  So did the Commission itself.  Jones Brothers petitioned this Court for review of the Commission's decision.  *See id.* § 816.

## II.

Before reaching the merits of Jones Brothers' Appointments Clause challenge, we must consider whether the company forfeited the issue.  That question requires some background to answer.

The Mine Act grants the Mine Commission the authority to appoint administrative law judges to adjudicate enforcement actions.  *Id.* § 823(b)(2).  Any person affected or aggrieved by an administrative law judge's decision may petition the Commission for review of that decision. *Id.* § 823(d)(2)(A)(i).  Among other things, he may argue that the decision is "contrary to law" or that a "finding or conclusion of material fact is not supported by substantial evidence."  *Id.* § 823(d)(2)(A)(ii).  Anyone aggrieved by a Commission decision may petition for judicial review of the decision in the circuit where the violation occurred.  *Id.* § 816(a)(1).

To ensure that the Commission has the first opportunity to correct its own errors and to advance the efficient disposition of litigation, the Mine Act imposes two exhaustion requirements.  If a claimant fails to bring a challenge before the administrative law judge, it is forfeited before the Commission "[e]xcept for good cause shown."  *Id.* § 823(d)(2)(A)(iii). A different requirement applies in the court of appeals:  "No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."  *Id.* § 816(a)(1).

Jones Brothers did not mention the Appointments Clause issue in front of the administrative law judge. Before the Commission, the company identified the constitutional issue. In full, it said: "In addition to the arguments set forth below, Jones Bros. also recognizes that there is currently a split among the Circuit Courts of Appeal as to whether administrative law judges, who are not appointed by the President, may constitutionally decide cases brought before them." A.R. at 258.

This sequence of events triggers three interrelated questions: Did Jones Brothers have an obligation to exhaust a constitutional claim like this one? If so, did its identification of the issue suffice? If not, does the "extraordinary circumstances" exception apply?

*Did Jones Brothers have an obligation to exhaust this constitutional claim?* Yes.

The answer requires some elaboration, as the statute does not spell out whether an aggrieved party must raise constitutional claims before the Commission. Here is what it says:

> Petitions for discretionary review shall be filed only upon one or more of the following grounds:
>
> (I)     A finding or conclusion of material fact is not supported by substantial evidence.
> (II)    A necessary legal conclusion is erroneous.
> (III)   The decision is contrary to law or to the duly promulgated rules or decisions of the Commission.
> (IV)    A substantial question of law, policy or discretion is involved.
> (V)     A prejudicial error of procedure was committed.

30 U.S.C. § 823(d)(2)(A)(ii).

What does the Mine Act mean when it refers to a decision "contrary to law" or a decision involving a "substantial question of law"? In one sense, the Constitution is a law, indeed our country's highest law. At first glance, one thus might read the statute to require exhaustion of any and all legal claims, whether arising under the Constitution, a statute, a regulation, or federal common law.

But it is perilous to pluck words from a statute and define them in isolation. A word's setting often offers the most promising insights about its meaning. Two features of this setting

stand out. This administrative agency, like all administrative agencies, has no authority to entertain a facial constitutional challenge to the validity of a law. An administrative agency may not invalidate the statute from which it derives its existence and that it is charged with implementing. *See Mathews v. Diaz*, 426 U.S. 67, 76 (1976); *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975); *Johnson v. Robison*, 415 U.S. 361, 368 (1974); *Pub. Util. Comm'n v. United States*, 355 U.S. 534, 539–40 (1958).

Each of the three branches of the federal government, it is true, has an independent obligation to interpret the Constitution. But only the Judiciary enjoys the power to invalidate statutes inconsistent with the Constitution. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177–78 (1803).

We thus could not fault a petitioner for failing to a raise a facial constitutional challenge in front of an administrative body that could not entertain it. *See McCarthy v. Madigan*, 503 U.S. 140, 147–48 (1992). To hold otherwise would be to stretch forfeiture beyond its breaking point. We must read the statute in light of its constitutional setting: The Mine Act establishes an agency dispute-resolution scheme of limited scope. In that context, "questions of law" include only those legal claims the Commission is fit to decide and fix. *See Plaquemines Port, Harbor & Terminal Dist. v. Fed. Mar. Comm'n*, 838 F.2d 536, 544 (D.C. Cir. 1988) (Bork, J.); *Motor & Equip. Mfrs. Ass'n v. EPA*, 627 F.2d 1095, 1114–15 (D.C. Cir. 1979).

Another feature of this statutory setting suggests that there is no exhaustion requirement, and thus no forfeiture penalty, with respect to facial constitutional claims. Keep in mind that the statute does not just refer to preserving issues of "law" in isolation. It requires exhaustion when decisions by administrative law judges are "contrary to law or to the duly promulgated rules or decisions of the Commission" or if those decisions implicate a "substantial question of law, policy or discretion." 30 U.S.C. § 823(d)(2)(A)(ii). (Another section of the statute, 30 U.S.C. § 811(d), requires exhaustion of challenges to the validity of agency rules in the first instance.)

Recall that the Commission exhaustion statute requires petitioners to raise any error of "fact or law" before the administrative law judge. *Id.* § 823(d)(2)(A)(iii). A finding "contrary to law or to the duly promulgated rules or decisions of the Commission" captures the statute's

reference to errors of "law."  By conspicuously enumerating those specific types of legal claims, it seems to us, the legislature showed its cards in declining to require petitioners to exhaust facial constitutional challenges.

But our day's work is not done.  Still unanswered is the lingering question of whether petitioners must preserve as-applied constitutional challenges or constitutional-avoidance arguments or whether they may raise them for the first time in the court of appeals.  For the reasons that follow, we think the statute requires exhaustion in these distinct settings.

It may be true that an administrative agency is a creature of statute and derives its existence and all of its power from Congress.  And it may be true that, without a statute conferring authority, a federal agency has no ability to act, let alone bind private actors.  But it does not follow that administrative agencies may look the other way when it comes to as-applied constitutional challenges and constitutional-avoidance arguments.  Agency actors must continually interpret and apply their statutory duties in light of constitutional boundaries.  The Mine Administration, for example, may not abuse its statutory authority by regulating wholly-intrastate worksites that fall outside of the federal government's Commerce Clause authority. That ongoing duty to conform its behavior with our highest law is inherent in and inseparable from the Executive's obligation to "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 3.  And it is re-enforced by the oath each executive officer must take to "to support this Constitution."  U.S. Const. art. VI.

Put differently, we must draw a distinction between the "constitutional applicability of legislation to particular facts and constitutionality of the legislation" in the first instance. 3 KENNETH CULP DAVIS, ADMINISTRATIVE LAW TREATISE § 20.04, at 74 (1958).  While the former attempts to give effect to legislative meaning, the latter attacks legislative meaning. Agencies may interpret the jurisdictional reach and substantive content of statutes that Congress entrusts to their administration.  But "[o]nly the courts have authority to take action which runs counter to the expressed will of the legislative body."  *Id.*

Many constitutional claims, however, turn on misused agency discretion, not statutory validity.  Imagine if the Mine Administration exercised its statutory authority to penalize only

individuals of a certain race or companies from a certain State. That would welcome an equal protection challenge. But because the petitioner's argument would turn on the way the Administration executed its statutory duties—not the validity of those statutory duties—the Commission could entertain the claim and remedy the constitutional infirmity. It would just stop the discriminatory enforcement.

Or imagine a challenge that turned on a process gone awry. Sometimes, the Mine Act calls for the Commission to "afford an opportunity for a hearing" before imposing penalties. 30 U.S.C. § 815(c)–(d). The statute in turn references the Administrative Procedure Act, which provides several procedural safeguards. 5 U.S.C. § 554. Even so, a petitioner might believe that he is entitled to additional procedures under the Fifth Amendment's Due Process Clause. *See Mathews v. Eldridge*, 424 U.S. 319 (1976). The Commission would be fit to adjudicate such a claim and afford the petitioner additional process, if required, without doing any violence to the Mine Act.

The government argues that petitioners may forfeit constitutional claims of any stripe, whether facial or as-applied. As support, they rely on *Elgin v. Department of Treasury*, 567 U.S. 1 (2012), and *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). But those cases speak to a different issue: the appropriate tribunal to hear claims of agency error. In both instances, petitioners brought challenges before a *district court*, circumventing the administrative process. *Elgin*, 567 U.S. at 7; *Thunder Basin*, 510 U.S. at 205. *Thunder Basin* featured constitutional and non-constitutional claims, and *Elgin* involved only constitutional claims. *Id.*

Each time, it is true, the Court held that the district court lacked jurisdiction over the case, because the governing statutes required the petitioners to seek shelter first under the administrative review process and, after that, in the appropriate court of appeals. *Elgin*, 567 U.S. at 23; *Thunder Basin*, 510 U.S. at 216. And each time, it is also true, the Court held that was the case even though the cases involved facial constitutional challenges. *Elgin*, 567 U.S. at 7; *Thunder Basin*, 510 U.S. at 205. But those cases still make good sense, even though the agencies had no authority to invalidate the statutes at issue.

In *Thunder Basin*, the company's non-constitutional claims "at root require[d] interpretation" of the Mine Act and thus fell "squarely within the Commission's expertise." 510 U.S. at 214. If the agency had agreed with the company on those grounds, any constitutional claim would have disappeared. *Elgin* picks up where *Thunder Basin* leaves off. Litigants cannot strategically evade *Thunder Basin*'s requirement by omitting their non-constitutional claims. For good reason: Before delving into any constitutional quandary, we usually give the Executive a chance to confirm that the relevant statutes and regulations apply to the petitioner in the way that he claims. Without doing so, the courts would have no idea how things would shake out. The agency might interpret those authorities differently. It might drop the enforcement action as a matter of informed discretion. Or it might deny relief.

In each event, the crucible of administrative review ensures that the petitioner's case presents a true constitutional dispute before the Judiciary steps in to decide those weighty issues. It has long been said that "if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter." *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). That's what *Elgin* and *Thunder Basin* promote. Administrative exhaustion is thus typically required so long as there is "the possibility of some relief for the action complained of," even if it is not the petitioner's preferred remedy. *Booth v. Churner*, 532 U.S. 731, 738 (2001).

Both cases also took care to underscore a critical feature of the administrative review channel: "[A]n Article III court fully competent to adjudicate petitioners' [constitutional] claims" backstopped the procedure. *Elgin*, 567 U.S. at 17; *see Thunder Basin*, 510 U.S. at 215. Without that safety net, the administrative process would have been inadequate to adjudicate constitutional claims. The same is true today.

That brings us back to Jones Brothers. As a threshold matter, Jones Brothers did not go to district court first, as Elgin and Thunder Basin did. The company made recourse to the administrative review process, then to us. The company pressed all of its non-constitutional claims to the agency, and the agency rejected them in full. All that remains (absent agency error)

is Jones Brothers' Appointments Clause challenge. Those cases thus present no obstacle to reviewing Jones Brothers' claim.

On which side of the line, then, does this case fall? Is Jones Brothers' claim one that the Commission could entertain? Jones Brothers argues that Administrative Law Judge Miller (who initially heard this case) is an inferior officer under the Appointments Clause. If true, she must be appointed by the President, a "Court[] of Law," or a "Head[] of Department[]." U.S. Const. art. II, § 2, cl. 2. Instead, the Chief Administrative Law Judge appointed her. All would be well, Jones Brothers admits, if the Commission had collectively appointed Administrative Law Judge Miller. That's because the Mine Commission is a "Department[]" and its five Commissioners collectively serve as its "Head." *See Lucia v. SEC*, 138 S. Ct. 2044, 2050 (2018); *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 512–13 (2010). The Mine Act thus gives the power to appoint administrative law judges to "[t]he Commission . . . as it deems necessary to carry out the functions of the Commission." 30 U.S.C. § 823(b)(2).

All of this shows that Jones Brothers seeks to enforce this provision, not to invalidate it. The company argues that § 823(b)(2), read in light of the Appointments Clause, imposes a non-delegation requirement. The Mine Commission may appoint administrative law judges as it deems necessary, but the Commission must do so itself.

In truth, Jones Brothers' claim is part constitutional and part statutory. What matters, though, is that the Commission was fully suited to entertain the claim and remedy any error at the time of Jones Brothers' petition for Commission review. Confirming the point, the Commission has since preemptively acted to cure this alleged constitutional defect by having every Commissioner ratify the appointment of every administrative law judge. Federal Mine Safety and Health Review Commission, *Commission Ratification Notice*, http://www.fmshrc.gov/about/news/commission-ratification-notice (Apr. 3, 2018).

We can crystallize the point by contrasting today's Appointments Clause problem with a different one. Imagine an alternative Mine Act that said, "the Chief Administrative Law Judge shall appoint two administrative law judges to adjudicate borrow pit enforcement actions." If administrative law judges are inferior officers, the Commission would have no way to cure the

constitutional violation. The Mine Commission is bound by the Mine Act, and there is no permissible way to interpret that hypothetical statute in a manner consistent with the Appointments Clause. In that setting, it would be futile to bring that claim to the Commission and senseless for an Article III court to enforce forfeiture. In the final analysis, we generally expect parties like Jones Brothers to raise their as-applied or constitutional-avoidance challenges before the Commission and courts to hold them responsible for failing to do so.

*Did Jones Brothers forfeit its constitutional claim?* Yes.

Before the Mine Commission, Jones Brothers said only that there is "currently a split among the Circuit Courts of Appeal" on the Appointments Clause issue. A.R. at 258. But to acknowledge an argument is not to make an argument. We have repeatedly held that a party forfeits any allegations that lack developed argument. *See, e.g.*, *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009). By failing to press an argument, Jones Brothers fell short of even that benchmark.

*Should we excuse Jones Brothers' forfeiture?* Yes.

The Mine Act allows courts to excuse forfeiture "because of extraordinary circumstances." 30 U.S.C. § 816(a)(1). While we are not prepared to say that the nature of Jones Brothers' claim always constitutes an extraordinary circumstance, the absence of legal authority addressing whether the Commission could entertain the claim does. The building blocks of today's opinion are established and weathered, but we know of no Supreme Court or court of appeals case that brings them together.

What's more, it's not as if Jones Brothers sandbagged the Commission or strategically slept on its rights. Keep in mind that Jones Brothers did not *waive* this constitutional challenge by consenting to a decision by an improperly appointed administrative law judge. It chose to identify the issue but not to press it—what amounts to a forfeiture. *See United States v. Olano*, 507 U.S. 725, 733–34 (1993) (clarifying the distinction between waiver and forfeiture). That makes this case quite unlike *Freytag v. Commissioner*, 501 U.S. 868 (1991), in which the individual raising an Appointments Clause challenge consented to the jurisdiction of an improperly appointed Tax Court Special Trial Judge. *Id.* at 871. Even then, the Court found it

the "rare case[]" in which the waiver would be excused.  *Id.* at 879.  That is a far cry from this case, making it even easier to forgive this forfeiture.  Recall what Jones Brothers said before the Commission:  "In addition to the arguments set forth below, Jones Bros. also recognizes that there is currently a split among the Circuit Courts of Appeal as to whether administrative law judges, who are not appointed by the President, may constitutionally decide cases brought before them."  A.R. at 258.  That is a reasonable statement from a petitioner who wishes to alert the Commission of a constitutional issue but is unsure (quite understandably) just what the Commission can do about it.

We recognize that some of our sister circuits have enforced the forfeiture of Appointments Clause challenges in circumstances that have some parallels to today's case.  *See, e.g.*, *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 351 n.5 (5th Cir. 2013); *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 795–98 (8th Cir. 2013); *In re DBC*, 545 F.3d 1373, 1377–81 (Fed. Cir. 2008).  But these opinions relied principally on the fact that structural constitutional challenges are not jurisdictional and thus are subject to ordinary principles of waiver and forfeiture.  *See Freytag*, 501 U.S. at 894 (Scalia, J., concurring in part and concurring in the judgment).

Nothing we have said today calls that tenet into question.  There is little doubt that constitutional rights that implicate government structure are no more important than individually focused civil rights that are readily forfeitable—free speech claims, for example.  *See Head v. N.M. Bd. of Exam'rs in Optometry*, 374 U.S. 424, 432 n.12 (1963).  Our concern is different.  The difficult issue is not whether Jones Brothers presented a structural challenge.  (It did.)  It is whether the Commission had authority to rule on the company's constitutional claim.  (It did, it turns out.)  We understand why *that* question may have confused Jones Brothers below and we hope this opinion helps clarify the matter for future petitioners and agency adjudicators.

Before turning (mercifully) to the merits, we must acknowledge that we have not followed Occam's razor by choosing the simplest answer to this vexing forfeiture question.  But we do not think Occam's razor exists here.  The only other options fix nothing and do not straighten our path.

One option is to say that, when the Mine Act says "[n]o objection that has not been urged before the Commission shall be considered by the court," 30 U.S.C. § 816(a)(1), it refers to objections of any sort, no matter their nature. Under that approach, if the agency lacks authority to entertain or remedy the petitioner's claim, that would always establish the "extraordinary circumstance" necessary to excuse the forfeiture. But that solution simply takes us back to the same inquiry we require: Was the agency competent to entertain the petitioner's claim? And it does so by overlooking the section of the Mine Act that enumerates the limited objections petitioners may bring before the Commission in the first place. *Id.* § 823(d)(2)(A)(ii).

Another option is to say that "law" excludes constitutional questions altogether because the Act does not expressly refer to the Constitution. This would save courts the trouble of distinguishing unfixable facial constitutional challenges from fixable as-applied constitutional challenges and constitutional-avoidance statutory challenges. But that approach is hard to square with the way most forfeiture laws work and with common sense. If the petitioner's grievance turns on the way the agency is interpreting or applying a statute, not the statute itself, why wouldn't Congress want him first to raise his claim to the agency? Congress deserves more credit than to want a petitioner to stay silent in front of the agency (when it can avoid the problem) and wait to raise an issue in court months later (when it is too late).

III.

*Lucia v. Securities & Exchange Commission* holds that the SEC's administrative law judges are inferior officers within the meaning of the Appointments Clause because they hold "continuing office[s] established by law" and exercise "significant discretion when carrying out . . . important functions." 138 S. Ct. at 2053 (quotations omitted).

The same problem haunts this case. The Commission's administrative law judges are likewise established by statute, 30 U.S.C. § 823(b)(2), and exercise significant authority commensurate with their SEC counterparts. Like SEC administrative law judges, they preside over trial-like hearings. In that role, they shape the administrative record by taking testimony, regulating document production and depositions, ruling on the admissibility of evidence, receiving evidence, ruling on dispositive and procedural motions, and issuing subpoenas. *See id.*

§ 823(e); 29 C.F.R. § 2700.55.  Indeed they exercise "nearly all the tools of federal trial judges." *Lucia*, 138 S. Ct. at 2053.

And like SEC administrative judges, they have the authority to issue initial decisions assigning liability and imposing sanctions.  *See* 30 U.S.C. § 823(d)(1).  After 40 days, those decisions become final decisions of the Mine Commission unless the Commission decides to review them.  *Id.*  But such review is available at "the sound discretion of the Commission," not as a "matter of right." *Id.* § 823(d)(2)(A)(i).  This process is nearly identical to the SEC's review process.  *See* 15 U.S.C. § 78d-1.

Therefore:  As inferior officers, the Commission's administrative law judges must be appointed by the President, a "Court[] of Law," or a "Head[] of Department[]."  U.S. Const. art. II, § 2, cl. 2.  The Mine Commission is a "Department[]" and its five Commissioners collectively serve as its "Head[]." *See Lucia*, 138 S.Ct. at 2050; *Free Enter. Fund*, 561 U.S. at 512–13.  The Mine Act gives the power to appoint administrative law judges to "[t]he Commission . . . as it deems necessary."  30 U.S.C. § 823(b)(2).  The Commission impermissibly delegated that power to the Chief Administrative Law Judge, who appointed the individual who decided Jones Brothers' case, Administrative Law Judge Miller.

In April, the Commission acted to cure this constitutional defect by having every Commissioner ratify the appointment of every administrative law judge.  *Commission Ratification Notice*, *supra*.  Even so, Jones Brothers is entitled to a new hearing before a constitutionally appointed administrative law judge.  And even if Administrative Law Judge Miller has since received a constitutional appointment, that hearing must be before a new official.  Judge Miller "issued an initial decision on the merits [and] cannot be expected to consider the matter as though [she] had not adjudicated it before." *Lucia*, 138 S. Ct. at 2055.

For these reasons, we vacate the Commission's decision and remand to the Commission for fresh proceedings.