RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0026p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

**20-3329**

JOSEPH FORRESTER TRUCKING; AMERICAN RESOURCES INSURANCE COMPANY,

*Petitioners,*

*v.*

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; ARTHUR DAVIS,

*Respondents.*

**20-3331**

H & P COAL COMPANY, INC.; AMERICAN RESOURCES INSURANCE COMPANY,

*Petitioners,*

*v.*

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; CECIL MAE MABE, on behalf of the Estate of Bill Wayne Mabe,

*Respondents.*

**20-3332**

LOCKWORTH, INC.; AMERICAN RESOURCES INSURANCE COMPANY,

*Petitioners,*

*v.*

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; LOYAL E. TACKETT,

*Respondents.*

> Nos. 20-3329/3331/3332

On Petitions for Review of Decisions and Orders of the Benefits Review Board.
Nos. 19-0099 BLA (Davis); 19-0096 BLA (Mabe); 19-0084 BLA (Tackett).

Argued: January 14, 2021

Decided and Filed: February 4, 2021

Before: KETHLEDGE, THAPAR, and READLER, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** Mark E. Solomons, GREENBERG TRAURIG LLP, Washington, D.C., for Petitioners. William M. Bush, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent. Evan B. Smith, APPALRED LEGAL AID, Prestonsburg, Kentucky, for Respondent Mabe. **ON BRIEF:** Mark E. Solomons, Laura Metcoff Klaus, GREENBERG TRAURIG LLP, Washington, D.C., for Petitioners. William M. Bush, Gary K. Stearman, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent. Evan B. Smith, APPALRED LEGAL AID, Prestonsburg, Kentucky, for Respondent Mabe. Jacob Thomas Moak, MOAK & NUNNERY, P.S.C., Prestonsburg, Kentucky, for Respondent Davis. Joseph E. Wolfe, Victoria S. Herman, WOLFE WILLIAMS & REYNOLDS, Norton, Virginia, for Respondent Tackett.

_____

**OPINION**

_____

CHAD A. READLER, Circuit Judge. In *Lucia v. SEC*, the Supreme Court held that administrative law judges (ALJs) at the Securities Exchange Commission are "Officers of the United States" for purposes of the Appointments Clause in Article II of the Constitution. 138 S. Ct. 2044 (2018). As "Officers of the United States," those ALJs are subject to the Appointments Clause's exclusive methods of appointment: by the President, by a department head, or by a court of law. U.S. CONST. art. II, § 2, cl. 2. When an ALJ holds her post in violation of the Appointments Clause, and a party timely objects, any adjudication she presided over must be vacated and assigned for rehearing before a different, properly appointed ALJ. 138 S. Ct. at 2055.

In resolving these lingering questions regarding ALJ appointments, *Lucia* left open at least one other: when is an Appointments Clause challenge timely? With nearly two thousand ALJs spanning agencies across the Executive Branch, that question has been raised with some frequency in *Lucia*'s wake. Today's case is one example.

As part of a consolidated appeal, three coal mine operators challenge an adverse black lung benefits determination made by the Department of Labor's Benefits Review Board. We must resolve whether a litigant forfeits an Appointments Clause challenge before the Board (and,

as a consequence, before us) by not pressing the issue during earlier proceedings before an ALJ. Honoring the Board's customary requirement that issues be raised first with the ALJ, we hold that the operators failed to preserve their Appointments Clause challenge. Accordingly, we deny the petition for review.

I.

In separate proceedings, Department of Labor ALJs awarded benefits under the Black Lung Benefits Act to three miners formerly employed by the coal mine operators before us today as petitioners. During a subsequent appeal to the Benefits Review Board, the operators, citing *Lucia*, argued for the first time that the ALJs who presided over the benefits determination hearings were appointed in violation of the Appointments Clause. The Board, however, understood *Lucia* to require "timely" Appointments Clause challenges, meaning those challenges are subject to applicable issue preservation doctrines like waiver and forfeiture. Invoking those doctrines, the Board concluded that the mine operators forfeited their *Lucia* arguments by failing to raise them before the ALJ, and otherwise affirmed the respective ALJ determinations. Before this Court, the operators seek fresh ALJ hearings solely on the basis of their Appointments Clause challenge.

II.

As a prelude to examining today's legal question, we begin with an overview of the black lung benefits administrative process. The Black Lung Benefits Act serves to compensate mine workers (and their survivors) who become totally disabled by pneumoconiosis, a debilitating breathing problem commonly known as "black lung disease." 30 U.S.C. §§ 901–44; *Eastover Mining Co. v. Williams*, 338 F.3d 501, 508 (6th Cir. 2003). The Act creates an adversarial dispute resolution system to determine whether a miner is eligible for benefits under the Act and, if so, whether a coal mine operator should be responsible for paying those benefits, 30 U.S.C. § 932; 20 C.F.R. § 725.494, or whether the benefits instead will be paid by the Black Lung Disability Trust Fund, 26 U.S.C. § 9501. To initiate the dispute resolution process, a miner or survivor files a claim with a Department of Labor district director, who in turn is empowered to "take such action as is necessary to develop, process, and make determinations with respect to

the claim." 20 C.F.R. § 725.401. Following an informal adjudication, during which the "responsible operator" can submit evidence responding to the claim, *id.* § 725.410, the district director issues a "proposed decision and order" either awarding or denying benefits. *Id.* § 725.418. That decision becomes final if no party objects within 30 days. *Id.* § 725.419.

A timely objection entitles the objecting party to a formal hearing before an ALJ. *Id.* § 725.421. In advance of the hearing, each objecting party must "specify the findings and conclusions [of the district director] with which the . . . party disagrees," *id.* § 725.419, teeing up those issues for an ALJ, who is charged with "resolv[ing] contested issues of fact or law" de novo, *id.* § 725.455. To do so, the ALJ conducts a hearing in accordance with the Administrative Procedure Act. *See* 33 U.S.C. § 919(d). During the hearing, the ALJ admits evidence, examines witnesses, and considers pleadings and briefs. 20 C.F.R. §§ 725.351(b), 725.455. Following the hearing, the ALJ issues a benefits determination, one that becomes final if no party seeks reconsideration or appeals to the Benefits Review Board. *Id.* § 725.479.

While an appeal from an ALJ's decision could formerly be lodged in the district court, under current law, a party seeking review of an ALJ's determination must submit a notice of appeal to the Board coupled with a petition for review "list[ing] the specific issues to be considered." *Id.* §§ 802.210, 802.211. The Board may "affirm, modify, vacate or reverse" the decision, or remand the case back to the ALJ for further consideration. *Id.* § 802.404.

From there, a party may file with the appropriate federal circuit court a petition for review of the Board's decision. 33 U.S.C. § 921(c); 20 C.F.R. § 802.410. In this Circuit, the Board is treated like the "district court[] it replaced," *Crockett Colleries, Inc. v. Barrett*, 478 F.3d 350, 358 (6th Cir. 2007) (Rogers, J., concurring). We review the Board's conclusions of law de novo and its factual findings under a substantial evidence standard. *Karst Robbins Coal Co. v. Dir., OWCP*, 969 F.3d 316, 323 (6th Cir. 2020) (citations omitted).

### III.

Now a word about issue preservation. Whether in proceedings before an administrative body or a court of law, a party customarily forfeits secondary review of issues not properly raised in an underlying phase of the proceeding. *Hormel v. Helvering*, 312 U.S. 552, 556 (1941).

That preservation principle applies with equal force in today's case, which started as an administrative proceeding, and has now migrated to federal court. *Sims v. Apfel*, 530 U.S. 103, 108–09 (2000). Out of respect to "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants," we customarily will "not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952). Enforcing these and other preservation principles, as we routinely do, serves the "twin purposes" of "protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992).

One common preservation rule is "issue exhaustion." Generally speaking, an issue exhaustion requirement obliges a party to challenge an issue it disputes during an initial proceeding. *Sims*, 530 U.S. at 109. Doing so allows the issue to be passed upon by the initial decisionmaker in the first instance, which also serves to inform any subsequent review. *Id.* Traditionally, we have applied this requirement across the legal spectrum, including in the context of an Appointments Clause challenge. Although an alleged Appointments Clause violation presents a "structural" challenge arising under the Constitution, the issue is neither jurisdictional, *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018), nor afforded "special entitlement to review," *Freytag v. C.I.R.*, 501 U.S. 868, 893 (1991) (Scalia, J., concurring in part and concurring in judgment). Appointments Clause challenges are thus "subject to ordinary principles of waiver and forfeiture." *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 678 (6th Cir. 2018). As a result, parties must press the argument at the proper stages as a prerequisite to obtaining subsequent review on that basis. *L.A. Tucker Truck Lines*, 344 U.S. at 36–37.

IV.

With these background principles in place, we turn to the operators' Appointments Clause challenge to the Department of Labor ALJs who oversaw their respective black lung benefits determination hearings. The Department and the beneficiaries assert that the operators failed to preserve the issue by not raising it during their respective ALJ hearings. To determine whether the operators forfeited their Appointments Clause challenge, we employ a settled

formula. *See Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019); *Jones Bros.*, 898 F.3d at 673. We ask first whether the black lung benefits administrative scheme requires a party to exhaust issues before an ALJ. If it does, we ask whether the operator properly exhausted its Appointments Clause challenge. And if the operator did not so exhaust, we ask whether that failure should be excused.

### A. There is an issue exhaustion requirement in ALJ black lung benefits proceedings.

Issue exhaustion requirements in administrative proceedings derive from either statute or regulation or, failing both, judicial prudence. 4 Charles H. Koch, Jr. & Richard Murphy, *Administrative Law and Practice* § 12:22 (3d ed. 2020). In *Island Creek Coal Co. v. Bryan*, we outlined a three-category framework of exhaustion requirements based on the requirement's source and hierarchy of legal soundness. 937 F.3d at 746–48.

As its name suggests, the first category, statutory exhaustion, arises when a statute expressly mandates that parties raise issues before the agency, subject to forfeiture. *Id.* at 746–47; *see Jones Bros.*, 898 F.3d at 673. As relevant here, *Bryan* determined (and the Department concedes) that the Black Lung Benefits Act contains no explicit statutory exhaustion requirement. *Bryan*, 937 F.3d at 749.

In the absence of a statutory mandate requiring exhaustion, we consider a second category of exhaustion: regulatory exhaustion. That type of exhaustion requirement arises from reasonable claims-processing rules promulgated by an agency. So long as those agency regulations comport with the implementing statute, we will honor their enforcement by the agency. *Id.* at 747 (citations omitted). *Bryan* is a case in point. There, we construed Department of Labor regulations requiring petitions for review to the Benefits Review Board to list the "specific issues to be considered" to impose a regulatory issue exhaustion requirement. *Id.* at 749 (citing 20 C.F.R. § 802.211(a)).

As explained next, our review of the Department of Labor's regulations reveals a regulatory exhaustion requirement applicable to ALJ proceedings. Black lung benefits adjudication regulations require that litigants raise issues before the ALJ as a prerequisite to

review by the Benefits Review Board.  The Board's longstanding practice of treating issues not raised below as forfeited confirms this conclusion.  (Accordingly, we need not consider the third exhaustion category, prudential issue exhaustion.  *See Bryan*, 937 F.3d at 747–49 (recognizing that prudential issue exhaustion may apply even when no regulation or statute requires parties to exhaust issues before the agency, but noting that the atextual nature of this doctrine leaves it on somewhat shaky footing).)

1.  Taken as a whole, the Benefits Review Board's governing regulations require that legal questions be raised before the ALJ to be reviewable by the Board.  Start with the regulations outlining the method for raising an issue before an ALJ.  Upon receiving a proposed decision and order from the district director, a party, to seek further review, must object to that proposal by "specify[ing] the findings and conclusions [of the district director] with which the responding party disagrees."  20 C.F.R. § 725.419(b).  In then requesting a hearing before an ALJ, the requesting party must highlight the "contested issue[s] of fact or law" to be addressed at the hearing.  *Id.* § 725.451.  And the hearing is then restricted to those contested issues unless a new issue is raised that "was not reasonably ascertainable by the parties at the time the claim was before the district director."  *Id.* § 725.463.  An issue of that ilk may be raised by a party "at any time . . . prior to decision," and when necessary, the ALJ can "remand the case to the district director [to] resolve the new issue, or refuse to consider such new issue."  *Id.* (cleaned up).

Further reflecting the Board's issue exhaustion requirement is the Board's constrained evaluation of an ALJ's determination.  The Board's review of legal questions is limited to "conclusions of law on which the decision or order appealed from was based."  20 C.F.R. § 802.301(a).  "Such . . . conclusions of law" may be set aside only if not "in accordance with law."  *Id.*  Those dual requirements frame the scope of the Board's review, as the Board will not "engage in a de novo proceeding or unrestricted review of a case brought before it."  *Id.*  Nor will it consider new evidence on appeal.  *Id.* § 802.301(b).  Any evidence outside the "record developed at the hearing before the [ALJ]" must be "returned without being considered by the Board."  *Id.*

Read together, these regulatory provisions require that an Appointments Clause challenge be raised before the ALJ to preserve the issue for the Board's review.  Section 725.463 gives a

party wide berth to raise issues with the ALJ "at any time" prior to the ALJ's decision.  But that wide berth reaffirms the need to raise contested issues with the ALJ.  As from there, § 802.301 confines the Board's review to the four corners of the record developed before the ALJ.  And an unraised *Lucia* claim neither raised by a party nor addressed by the ALJ cannot be a conclusion of law "on which the [ALJ's] decision . . . was based."  *Id*. § 802.301(a).  Simply put, in the absence of a developed legal and factual Appointments Clause challenge, the Board is unable to address the issue without engaging in a prohibited "de novo" or "unrestricted" review of the ALJ decision.  *Id.*

2.  Consistent with this regulatory backdrop, the Board's longstanding practice has been to deem forfeited those objections not raised with the ALJ.  For decades, the Board has routinely cited, with near black-letter authority, the principle that issues not raised before the ALJ are forfeited.  *See, e.g.*, *Powell v. Serv. Emps. Int'l, Inc.*, No. 18-0557, 2019 WL 4201393, at *3 (Ben. Rev. Bd. Aug. 8, 2019); *Johnson v. Royal Coal Co.*, No. 01-0388, 2002 WL 32301641, at *4–5 (Ben. Rev. Bd. Feb. 28, 2002); *Dankle v. Duquesne Light Co.*, No. 95-0957, 1995 WL 17049134, at *2 (Ben. Rev. Bd. Aug. 30, 1995); *Prater v. Dir., OWCP*, No. 81-1278, 1986 WL 66307, at *1 (Ben. Rev. Bd. Feb. 10, 1986); *see also Black Lung Deskbook*, Benefits Review Board Policies and Procedures, U.S. Dep't of Labor, Part V § A.9 (rev. Sept. 2010) ("The appealing party is limited in the issues it may raise since the Board follows the well established principle that issues not effectively presented to an [ALJ], where ample opportunity to do so has been afforded, cannot be raised on appeal.").  The operators do not cite, nor can we find, any case law that counters this uniform line of authority.

True, the Board, both here and elsewhere, has not always cited regulatory authority when invoking its forfeiture doctrine, opting instead at times to rely upon general principles of waiver and forfeiture.  *See, e.g.*, *Kiyuna v. Matson Terminals, Inc.*, No. 19-0103, 2019 WL 2881243, at *2 (Ben. Rev. Bd. June 25, 2019).  But text and structure convincingly demonstrate that Department regulations require parties to raise issues before the ALJ to avoid forfeiting them.  We thus decline to "topple over" the Board's finding of untimeliness.  *L.A. Tucker Truck Lines*, 344 U.S. at 37.

3.   Of course, regulatory exhaustion requirements are only valid to the extent they "comport 'with congressional intent and any applicable statutory scheme.'" *Bryan*, 937 F.3d at 746 (quoting *McCarthy*, 503 U.S. at 144).   On that score, the Secretary of Labor enjoys the authority to promulgate regulations he "deems appropriate to carry out" the benefits-adjudication process.   30 U.S.C. § 936(a); 33 U.S.C. § 939(a).   Those regulations, however, may not be contrary to law, 30 U.S.C. § 932, nor may they run afoul of the Administrative Procedure Act and its proscription on "arbitrary and capricious" agency action, *id.* § 936(a) (citing 5 U.S.C. § 553).   And even when duly enacted, the Department may not apply its regulations in an unreasonable or arbitrary manner, for example, by selectively enforcing the regulations.   *Bryan*, 937 F.3d at 747 (citing *Crockett Colleries*, 478 F.3d at 353–55).

All of that said, we see no reason to believe that the Department of Labor's exhaustion requirement derogates statutory authority, conflicts with other regulations, or has otherwise been applied in an arbitrary or inconsistent manner.   *Id.*   The Black Lung Benefits Act makes clear that the Board has a limited scope of review, and that its orders "shall be based upon the hearing record."   33 U.S.C. § 921(b)(3).   Imposing a standard issue exhaustion requirement to facilitate that review falls safely within the Secretary's broad statutory authority.

In one instance, the operators remind us, the Board remanded an Appointments Clause challenge brought for the first time in opening briefs.   *See Miller v. Pine Branch Coal Sales, Inc.*, No. 18-0323, 2018 WL 8269864, at *1 (Ben. Rev. Bd. Oct. 22, 2018) (per curiam).   But *Miller* is unlike today's case in numerous respects.   For one, *Miller* dealt only with questions of remedy— whether an ALJ's subsequent ratification cures an Appointments Clause violation—not questions of timeliness.   *Id.* at *2.   For another, the Board remanded the matter at the Director's request, rather than deciding whether to accept the operators' previously unraised arguments.   *Id.*   And at all events, the remand occurred before *Lucia*, and thus against a legal backdrop different than the one in place today.   Placed in its proper context, *Miller* does not contradict the Board's longstanding requirement that issues be exhausted before the ALJ.

4.   Resisting the force of this collective body of authority, the operators argue that requiring exhaustion in this setting contravenes our precedent.   That precedent, the operators say, at most requires only that "substantive challenges to an ALJ's determination be raised in a

party's opening brief filed with the Board." *Island Creek Coal Co. v. Young*, 947 F.3d 399, 402 (6th Cir. 2020). In acknowledging one exhaustion requirement in *Young*, however, we did not somehow do away with the rest. Consider a baseball analogy. Just like a runner must tag every base before running to home plate, a party must touch each base of the preservation process during the administrative and court proceedings. And just because an operator touches second base by raising an issue in its opening brief to the Board, *see* 20 C.F.R. § 802.211; *Bryan*, 937 F.3d at 749, that does not excuse it from also touching first (preserving the issue before the ALJ) and third (raising the issue on appeal to this Court) before heading home.

Equally unhelpful to the operators are cases exploring exhaustion requirements in other administrative schemes. Exhaustion requirements must be applied "with a regard for the particular administrative scheme at issue." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975) (citations omitted). *Lucia*, for example, arose under an SEC structure with markedly different exhaustion considerations than those in the black lung context. 138 S. Ct. at 2049. The same goes for *Freytag* and its examination of exhaustion requirements within the Internal Revenue Service. *See Bryan*, 937 F.3d at 754 (citing *Freytag*, 501 U.S. at 878–79, and rejecting that it controls in the black lung context). The particulars of these and other adjudicatory settings do little to inform the operators' responsibility to exhaust during black lung benefits proceedings. *See Ramsey v. Comm'r*, 973 F.3d 537, 547 n.5 (6th Cir. 2020) (acknowledging that "our holding today" addressing prudential exhaustion before Social Security ALJs "in no way decides whether a similar result would be appropriate for Appointments Clause challenges to the ALJs of other administrative agencies"). On this point, it bears emphasizing that the administration of black lung benefits claims can be attenuated, and then prolonged even more should the administrative determination be appealed. *See* Office of Administrative Law Judges, Quarterly Report on Case Inventory for 3rd Quarter FY 2020, at 11 (showing the median length of time for black lung cases to be 20 months from docketing to ALJ decision). Take the claims here, for example, which date back to 2012. Regrettably, by the time of today's decision, two of the three miners have died, never to see their claims fully adjudicated. It is thus easy to understand why the Board's regulatory scheme disfavors allowing an operator to undo years of proceedings based upon arguments at its disposal from the start.

**B. The operators did not exhaust their Appointments Clause claim before the ALJs.**

By failing to comply with the Board's timeliness requirements, the operators failed to preserve their Appointments Clause challenges. Each operator, all agree, raised their Appointments Clause claim for the first time before the Board. Yet as just explained, to preserve an Appointments Clause argument for review by the Board, a litigant in the black lung benefits setting must first raise the issue with the ALJ. *See* 20 C.F.R. § 725.463. On that basis, the Board held that the operators' Appointments Clause arguments came too late in the day. Consistent with our own mandate not to consider issues left unexhausted before the agency, we too find those arguments not properly preserved for review. *Bryan*, 937 F.3d at 751.

Here again, the operators see things differently. They contend that their Appointments Clause challenges were preserved by the fact that each ALJ's decision and order included a short footnote mentioning that the ALJ had reviewed and confirmed its prior actions in light of the ALJ's reappointment by the Secretary of Labor. Unlike the operators, however, we do not read *the ALJ's* recognition of *the Department's* response to *Lucia* as akin to *a party* affirmatively raising a *Lucia* challenge. One ALJ, in fact, expressly stated that "[n]o party has raised a challenge pursuant to *Lucia*." And more broadly, issue preservation rules exist to ensure that contested issues receive the adversarial vetting necessary for meaningful appellate review. *See Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 528 (6th Cir. 2014). Requiring parties to raise an issue before a lower tribunal benefits litigants and judges alike; opposing parties receive fair notice of the issue, and appellate tribunals benefit from the lower tribunal's initial review. *Id.* A tribunal's mere "passing mention" of an issue, however, does not serve those purposes. *See Moore v. Rohm & Haas Co.*, 446 F.3d 643, 645, 647 (6th Cir. 2006). Particularly so here, where the ALJ's brief reference to his reappointment following *Lucia* did not otherwise engage on the matter. The full nature of the Appointments Clause issue, in other words, was neither framed by the parties nor resulted in the ALJ passing on the issue's merits. *See Jones Bros.*, 898 F.3d at 677 (explaining that even as to a party, "to acknowledge an argument is not to make an argument"). If anything, the ALJ's raising of the issue only underscores the availability of a challenge the operators neglected to bring.

**C. There is no basis to excuse the operators' failure to exhaust.**

Even with the operators having failed to satisfy the Board's regulatory exhaustion requirement, we may excuse that noncompliance where the Board's regulations are "best read to give judges leeway to create exceptions or to [] incorporate standard administrative-law exceptions." *See Bryan*, 937 F.3d at 751–52 (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1858 n.2 (2016)). The operators, however, fail to identify an applicable exception that would excuse their failure.

The operators first invoke the general rule that forfeiture is excused "when raising the issue [to the agency] would have been futile." *Appleton & Ratliff Coal Corp. v. Ratliff*, 664 F. App'x 470, 477 n.4 (6th Cir. 2016) (quoting *Consol. Coal Co. v. McMahon*, 77 F.3d 898, 904 (6th Cir. 1996)). To be sure, raising a facial constitutional challenge outside the limited scope of an ALJ's adjudicative authority might well be futile. *See Peabody Coal Co. v. Greer*, 62 F.3d 801, 806 (6th Cir. 1995). But an Appointments Clause challenge is, at bottom, an as-applied constitutional challenge; it contests "how the Department of Labor *applied* its statutory appointments power," not the constitutionality of the statutes themselves. *Bryan*, 937 F.3d at 738 (emphasis in original).

ALJs can entertain as-applied constitutional challenges and provide the requested relief "without doing any violence" to the Black Lung Benefits Act. *See Jones Bros.*, 898 F.3d at 675; *see, e.g.*, *Farley v. Canada Coal Co., Inc.*, 2016-BLA-05786, 2016-BLA-05835, Order Granting Motion to Strike (OALJ May 7, 2018) (granting relief to remedy an asserted due process violation). Here, the remedy sought—reassignment to a constitutionally appointed ALJ—could have been awarded by the ALJ. Proving as much, that exact remedy was awarded in legions of other post-*Lucia* black lung disputes following the assertion of a properly raised Appointments Clause challenge before the initial ALJ. *See, e.g.*, *McNary v. Black Beauty Coal Co.*, 2014-BLA-5373, Order Granting Employer's Motion to Reassign (OALJ Aug. 22, 2018); *Mullins v. Prestige Coal Co.*, 2017-BLA-6241, Notice and Order (OALJ Aug. 22, 2018); *Powell v. Garrett Mining, Inc.*, 2012-BLA-5298, Notice and Order (OALJ Aug. 20, 2018). Alternatively, where the issue was raised but relief was not granted, the objection was nonetheless preserved for

Board review.  *See, e.g.*, *Stiltner v. Superior Mining & Minerals*, 2014-BLA-05333, Decision and Order on Remand (OALJ Apr. 10, 2018).

Nor do we find merit in the operators' contention that their failure to exhaust their Appointments Clause challenge was justified by the purported stakes of doing so.  As the operators see things, raising a structural constitutional objection would "engender hostility" and risk bias from the assigned ALJ, whose "job is threatened" by the objection.  That concern, however, is deeply speculative.  And entirely unfounded, it would appear.  After all, the ALJs in this very case have a history of reassigning cases upon a proper *Lucia* objection.  *See, e.g.*, *Logan v. Willis Hogg Coal Co.*, No. 2015-BLA-05347, Order Granting the Employer's Motion for Reconsideration (OALJ Oct. 22, 2018) (ALJ Silvain reassigning case to another ALJ once Appointments Clause challenge was raised).

Equally unavailing is the operators' reliance on the "intervening-change-in-law" doctrine.  That doctrine generally serves to excuse a failure to exhaust when an issue was not available to the party below.  *Hormel*, 312 U.S. at 558–59.  Appointments Clause challenges, however, were available before *Lucia*.  *Wilkerson*, 910 F.3d at 257; *see also Luckern v. Richard Brady & Assocs.*, No. 18-0123, 2018 WL 5734480, at *2 n.3 (Ben. Rev. Bd. Oct. 30, 2018) (rejecting that *Lucia* constitutes an intervening change in the law).  *Lucia* confirmed as much when it noted that the Supreme Court had already said "everything necessary to decide this case."  *Lucia*, 138 S. Ct. at 2053.  And even if *Lucia* did mark a change in the law, the operators failed to raise that development with the respective ALJs in the wake of that decision—despite the fact that the Board's regulations generously allowed the operators to raise the issue "at any time . . . prior to decision by an [ALJ]."  20 C.F.R. § 725.463(b).

\*     \*     \*     \*     \*

One final point deserves mention.  While we do not see evidence that the operators acted with a nefarious motive, we are nonetheless mindful not to invite "sandbagging" or "judge-shopping" in future black lung proceedings.  *See Freytag*, 501 U.S. at 895 (Scalia, J., concurring); *Gonnella v. SEC*, 954 F.3d 536, 544 (2d Cir. 2020) (emphasizing that "compelling policy reasons" support forfeiture of untimely Appointments Clause challenges); *Carr v.*

*Comm'r*, 961 F.3d 1267, 1275 n.9 (10th Cir.), *cert. granted sub nom. Carr v. Saul*, --- S. Ct. ---, 2020 WL 6551771 (U.S. Nov. 9, 2020) (same).  A settled rule in seemingly every forum for dispute resolution is that a judge's authority should be challenged at the "earliest practicable moment" to "prevent[] litigants from abiding the outcome of a lawsuit and then overturning it if adverse upon a technicality of which they were previously aware." *Glidden Co. v. Zdanok*, 370 U.S. 530, 535 (1962) (plurality opinion).  In the absence of issue exhaustion, a party could wait until an ALJ renders an adverse decision before raising an Appointments Clause challenge, with the potential to receive a new hearing before a new (and perhaps more sympathetic) ALJ.  Just as Congress would not "want a petitioner to stay silent in front of the agency (when it can avoid the problem) and wait to raise an issue in court months later (when it is too late)," *Jones Bros.*, 898 F.3d at 679, it is understandable why the Department of Labor would first want issues raised with an ALJ.  Any other approach, our colleague recently emphasized in this very context, allows the "wiley lawyer" to take "two bites at the apple." *Ramsey*, 973 F.3d at 548 (Siler, J., dissenting).  That is why we too enforce issue preservation requirements in a variety of settings. *Berkshire v. Beauvais*, 928 F.3d 520, 530 (6th Cir. 2019) (parties forfeit arguments not raised in objections to a magistrate judge's report and recommendation); *Frazier v. Jenkins*, 770 F.3d 485, 497 (6th Cir. 2014) (parties forfeit arguments not raised before the district court); *Courser v. Allard*, 969 F.3d 604, 621 (6th Cir. 2020) (parties forfeit arguments not raised in an opening appellate brief); *United States v. Carson*, 560 F.3d 566, 587 (6th Cir. 2009) (parties forfeit arguments raised for the first time in a reply brief).

These concerns also help explain the Board's exhaustion requirement.  From discouraging gamesmanship to preserving judicial resources, exhaustion requirements enhance the dispute resolution process for all involved, both in administrative proceedings and in federal court.

V.

For the foregoing reasons, we deny the consolidated petition for review.