RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0028p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

MABEL SAMONS,

*Petitioner*,

*v.*

NATIONAL MINES CORPORATION; OLD REPUBLIC INSURANCE COMPANY; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

*Respondents*.

No. 20-3209

───────────────

On Petition for Review from the Benefits Review Board;
Nos. 18-0366 BLA; 18-0523 BLA.

Decided and Filed: February 11, 2022

Before: McKEAGUE, NALBANDIAN, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:** Evan B. Smith, APPALRED LEGAL AID, Prestonsburg, Kentucky, for Petitioner. Mark E. Solomons, Michael A. Pusateri, GREENBERG TRAURIG LLP, Washington, D.C., for Respondents National Mines Corp. and Old Republic Insurance. Sean G. Bajkowski, Anne Marie Scarpino, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for federal Respondent.

───────────────

## OPINION

───────────────

MURPHY, Circuit Judge. After working underground in coal mines for three decades, Casey Samons developed pneumoconiosis (commonly known as black-lung disease). His widow, Mabel Samons, sought benefits under the Black Lung Benefits Act, 30 U.S.C.

§§ 901–44.  It took the Department of Labor 17 years to decide (and ultimately deny) her claims. During this time, the claims bounced back and forth between an administrative law judge and the agency's appellate body, the Benefits Review Board.  In the last appeal, the Board also rejected one of Samons's main arguments on what Samons likely views to be a legalistic ground ("law of the case") without ever reaching the merits.  The Department of Labor then delayed things further by filing an incomplete and disorganized administrative record in our court.  We thus understand Samons's frustrations with the agency's handling of her claims.  But while its actions perhaps could be described as poor customer service, they do not show any reversible legal error in the agency proceedings.  To the contrary, the Board could lawfully invoke the discretionary law-of-the-case doctrine to avoid reexamining an issue on which it had affirmed the administrative law judge years before.  And the judge's credibility findings about the conflicting medical opinions pass muster under our deferential "substantial evidence" test.  We thus affirm the Board's decision.

I

A

Extended work in coal mines has led many miners to develop the respiratory disease known as pneumoconiosis.  *See U.S. Dep't of Lab. v. Triplett*, 494 U.S. 715, 717 (1990).  The Black Lung Benefits Act allows coal miners (and some of their surviving relatives after their death) to seek benefits if they develop this disease.  *See id.*  The Secretary of Labor has issued many regulations to implement the Act.  *See Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 743 (6th Cir. 2019).  To obtain benefits under these regulations, miners must prove four things: they have pneumoconiosis; this disease resulted from their coal-mine work; they are totally disabled; and the disease contributes to their total disability.  20 C.F.R. § 725.202(d)(2).

This case centers on the third element: total disability.  Regulations treat a miner as "totally disabled" if the miner "has a pulmonary or respiratory impairment which, standing alone, prevents or prevented" the miner both "[f]rom performing his or her usual coal mine work" and "[f]rom engaging" in other "gainful employment" near the miner's home that requires similar skills and abilities.  *Id.* § 718.204(b)(1).  A miner's "usual coal mine work" has been

interpreted to mean "the most recent job the miner performed regularly and over a substantial period of time." *Shortridge v. Beatrice Pocahontas Coal Co.*, 4 Black Lung Rep. (MB) 1-534, 1-539 (Ben. Rev. Bd. 1982); *U.S. Steel Mining Co. v. Dir., OWCP*, 386 F.3d 977, 981 (11th Cir. 2004); *see also Walker v. Dir., Off. of Workers' Comp. Programs*, 927 F.2d 181, 183 (4th Cir. 1991).

Miners can prove their total disability in two general ways (apart from using various legal presumptions that are not at issue in this case). They can rely on objective evidence, including, as relevant here, pulmonary-function tests. 20 C.F.R. § 718.204(b)(2)(i). To establish a miner's total disability, the results of a test must fall within specified ranges listed in the regulations. *Id.*; *see id.* pt. 718, app. B. Alternatively, miners can rely on a physician's medical opinion that their impairment has rendered them totally disabled within the meaning of the regulatory definition. *Id.* § 718.204(b)(2)(iv). Physicians must exercise "reasoned medical judgment" and base their opinions on "medically acceptable clinical and laboratory diagnostic techniques." *Id.* And evidence supporting a miner's total disability must be weighed against any "contrary probative evidence[.]" *Id.* § 718.204(b)(2); *Peabody Coal Co. v. Hill*, 123 F.3d 412, 416 (6th Cir. 1997).

A miner's total disability also affects survivor's claims. If a miner is awarded benefits, eligible relatives can receive survivor's benefits upon the miner's death without additional proof. 30 U.S.C. § 932(l); *Consolidation Coal Co. v. Maynes*, 739 F.3d 323, 326 (6th Cir. 2014). Otherwise, survivors must prove three elements, including that the "miner's death was due to pneumoconiosis[.]" 20 C.F.R. § 718.205(a)(3). But the miner's death is presumed to be due to the disease if survivors prove, among other things, that the miner was totally disabled. *Id.* § 718.305(b)–(c).

The coal-mine operator for whom the miner last worked generally must pay these benefits. *See id.* §§ 725.494–.495. To resolve benefits-eligibility disputes between operators and miners, the Act incorporates the claims-processing rules of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–50. 30 U.S.C. § 932(a). After an administrator issues a proposed eligibility decision, a miner or operator may request a hearing before an administrative law judge. 33 U.S.C. § 919(d); 20 C.F.R. §§ 725.418, 725.451. A losing party may then appeal that judge's decision to the Benefits Review Board. 33 U.S.C. § 921(b)(3). Although the Board

reviews legal issues de novo, it must accept all of the judge's factual findings as long as they are "supported by substantial evidence in the record considered as a whole." *Id.* If the Board finds that the judge erred, it may remand the case to the judge. *Id.* § 921(b)(4). If it issues "a final order," a party may seek review in a federal circuit court. *Id.* § 921(c); *see Bryan*, 937 F.3d at 744.

B

Born in 1920, Casey Samons (whom we will refer to as Casey to distinguish him from his wife) began working in the coal mines in 1940. Casey put in two years at this coal job before leaving in June 1942 to serve his country during World War II. He returned to the mines in Kentucky in 1946 and took various coal-related jobs from that year until his health forced him to retire in 1976. All told, he worked underground in the coal mines for over 30 years. He married Mabel Samons in 1942 and they remained married for over 60 years until his death. Samons thus qualifies as an eligible survivor. *See* 20 C.F.R. § 720.212.

Casey filed a claim for benefits in 2003 when he was 82 years old, but he sadly passed away two years later with his claim still pending. Samons took over Casey's claim on behalf of his estate and filed her own claim for survivor's benefits starting on the date of his death. Over the next 15 years, this case took four trips between an administrative law judge and the Board.

*Round One*. A federal administrator initially awarded Samons benefits on both Casey's claim and her survivor's claim. Casey's former employer, National Mines Corporation, asked for a hearing before an administrative law judge.

At the hearing, the parties introduced the typical evidence used to prove or disprove a miner's total disability, including pulmonary-function tests (under 20 C.F.R. § 718.204(b)(2)(i)) and physician opinions (under 20 C.F.R. § 718.204(b)(2)(iv)). Before his death, Casey had taken four pulmonary-function tests. Some of these tests produced qualifying scores; others did not. Two doctors who reviewed the tests also opined that some qualifying scores were invalid due to Casey's lack of effort.

In addition to the tests, five doctors opined on Casey's health. Samons introduced the opinions of Dr. Roger Jurich, Casey's treating physician, and Dr. Glen Baker. Both doctors opined that Casey met the regulatory definition for "total disability." National Mines introduced the opinions of Dr. Abdul Dahhan (for Casey's direct claim and Samons's survivor's claim) and Dr. Gregory Fino (for Casey's direct claim only). (Parties may introduce only two opinions per claim, 20 C.F.R. § 725.414(a)(2)(i), and National Mines used a different opinion for the survivor's claim.) These two doctors opined that Casey did not meet the total-disability definition. The administrative law judge lastly obtained the report of Dr. Valentino Simpao. Simpao opined that Casey had a "moderate impairment," but did not state whether Casey was totally disabled.

In his first decision, the administrative law judge denied benefits on the ground that Samons failed to prove Casey's total disability. The judge held that Casey's pulmonary-function tests did not establish his total disability under § 718.204(b)(2)(i) because of the mix of qualifying and nonqualifying scores. Turning to the medical opinions, the judge rejected those of Drs. Baker and Simpao for various reasons. He next credited the views of Drs. Dahhan and Fino (that Casey was not totally disabled) over those of Dr. Jurich (that he was) because of their superior qualifications. The judge lastly denied Samons's claim for survivor's benefits because he found that Casey had died from a staph infection, not pneumoconiosis.

Samons appealed. The Board affirmed in part, vacated in part, and remanded to the administrative law judge. *Samons v. Nat'l Mines Corp.*, 2012 WL 423892, at *6 (Ben. Rev. Bd. Jan. 27, 2012) (per curiam). It noted that the judge's conclusion that the pulmonary-function tests did not prove Casey's total disability under § 718.204(b)(2)(i) was "unchallenged on appeal" and so "affirmed." *Id.* at *2 n.7. But the Board held that the judge erred when evaluating the medical opinions on this total-disability issue. *Id.* at *2–4. It remanded for reconsideration of these opinions. *Id.* at *4. When doing so, the Board reminded the judge that the "total disability" definition required him to identify Casey's "usual coal mine work" and the "exertional requirements" of that work. *Id.* at *3 n.9. And it noted that this issue affected the survivor's claim too because a total-disability finding could trigger the presumption that Casey's death was due to pneumoconiosis. *See id.* at *6 & n.14.

*Round Two*. In his second decision, the judge identified the exertional requirements of Casey's work and reevaluated the medical opinions. Over many years, the judge found, Casey had worked "as a loader, belt man, motorman, brattice man, and tractor operator[.]" Op., R.32-2, PageID 397. The judge decided that all of these jobs required moderate to heavy labor and thus did not identify which specific one qualified as Casey's "usual" work. After reevaluating the medical opinions, he gave controlling weight to the opinion of Dr. Jurich, Casey's treating physician. The judge thus held that Casey was totally disabled and awarded Samons benefits.

This time, National Mines appealed. The Board vacated the judge's finding that the medical opinions established total disability. *Samons v. Nat'l Mines Corp.*, 2014 WL 3388588, at *3–4 (Ben. Rev. Bd. June 16, 2014) (per curiam). It did not believe that the evidence supported the conclusion that all of Casey's jobs required the same level of exertion. *See id.* It thus instructed the judge to identify Casey's usual coal-mine work and consider whether each doctor correctly understood that work's exertional requirements when opining on his disability. *Id.* at *4.

*Round Three*. In his third decision, the administrative law judge decided that the conflicting evidence did not allow him to make findings about Casey's usual work or the exertion that it required. Some evidence suggested that Casey had been a "brattice man" in his final role; other evidence suggested he had been a "tractor operator" or "belt man." Op., R.32-1, PageID 191. The judge added that the record did not include evidence of what duties these jobs entailed. Because Samons bore the burden of proof, the judge found that she failed to establish total disability.

Samons appealed. For a third time, the Board remanded. *Samons v. Nat'l Mines Corp.*, 2016 WL 8260745, at *6 (Ben. Rev. Bd. July 26, 2016) (per curiam). It noted that the judge could not refuse to make findings simply because the record contains conflicting evidence. *Id.* at *4. And if the record did not include enough evidence about a specific job's duties, the Board explained, the judge could take judicial notice of the *Dictionary of Occupational Titles*. *Id.* at *4–5.

*Round Four.* In his fourth decision, the administrative law judge again found that Samons failed to establish Casey's total disability. The judge determined that Casey's usual coal-mine work was one of three jobs: a "brattice man" (someone who constructs doorways and ventilation walls in the mines), a "tractor operator" (someone who loads materials and drives a tractor), or a "belt man" (someone who picks out materials from a conveyor belt). Op., R.32-2, PageID 797–99. But the record did not identify the exertional requirements of these jobs, so the judge looked to the *Dictionary of Occupational Titles*. Each job fell within a different strength category—a brattice builder engaged in heavy work, a tractor operator engaged in medium work, and a belt picker engaged in light work. The judge did not identify one of these jobs as Casey's "usual" work, but he chose the standards for "heavy work" to describe the exertional requirements of that work. *Id.*, PageID 802–03. The judge concluded that "the range of exertion required by [Casey's] usual coal mine work involved exerting *up to* 100 pounds of force occasionally, *up to* 50 pounds of force frequently, and *up to* 20 pounds of force constantly to move objects." *Id.*

The judge then compared these exertional requirements to each doctor's view of Casey's work. He found that Dr. Dahhan's and Dr. Fino's views about Casey's coal-mine work were "quite similar" to his own. *Id.*, PageID 804–05. He thus gave their opinions great weight. The judge, by contrast, gave little weight to the opinions of Drs. Baker, Simpao, and Jurich because their reports failed to show that they accurately understood the exertional requirements of Casey's job.

Apart from arguing over the medical opinions on this third remand, Samons renewed her claim that Casey's pulmonary-function tests justified a total-disability finding under 20 C.F.R. § 718.204(b)(2)(i). The judge did not address her arguments on the merits. He instead noted that the Board had already affirmed his conclusion that they did not prove Casey's total disability.

Samons appealed a final time. The Board affirmed. *Samons v. Nat'l Mines Corp.*, 2020 WL 729893, at *4 (Ben. Rev. Bd. Jan. 30, 2020) (per curiam). It rejected Samons's claim that the judge should have addressed her arguments about the pulmonary-function tests. *Id.* at *2 n.9. Because it had affirmed the judge's conclusion that the tests did not establish total disability on the first appeal, it said that its prior affirmance "constitutes the law of the case." *Id.*

The Board next turned to the medical opinions. *Id.* at \*3–4. It affirmed the judge's findings with respect to Drs. Baker, Simpao, and Jurich. *Id.* Because Samons had no other evidence to show Casey's total disability and because she bore the burden of proof, the Board reasoned that this conclusion sufficed to affirm outright. *Id.* at \*4. It did not address Samons's arguments that the judge wrongly credited the opinions of Drs. Dahhan and Fino. *Id.* at \*4 n.14.

II

The Board having at long last issued a final order, Samons appeals to our court. She argues that: (1) the Board wrongly refused to consider whether Casey's pulmonary-function tests established total disability under 20 C.F.R. § 718.204(b)(2)(i); (2) the administrative law judge wrongly found that the opinion evidence did not establish total disability under 20 C.F.R. § 718.204(b)(2)(iv); and (3) the Department of Labor failed to adequately compile the administrative record.

A. The Pulmonary-Function Tests

In the final round of administrative proceedings, Samons asserted that the administrative law judge had committed two mistakes in the first round when holding that the pulmonary-function tests did not establish Casey's total disability under § 718.204(b)(2)(i). The regulations rely on a miner's height to identify the test score necessary for the miner to qualify as totally disabled, *see* 20 C.F.R. pt. 718, app. B, and Samons claimed that the judge inaccurately identified Casey's height. Samons also argued that the judge wrongly credited Dr. Fino's claim that Casey's lack of effort during his test rendered its qualifying score invalid because other doctors had suggested that the score was valid. The Board did not consider these arguments on their merits because it found that "law of the case" excused it from reassessing whether the pulmonary-function tests established Casey's total disability. *Samons*, 2020 WL 729893, at \*2 n.9.

1

Samons asserts that the Board wrongly invoked the law-of-the-case doctrine to summarily reject these arguments in the fourth round of proceedings. We disagree.

The doctrine known as "law of the case" encapsulates a simple idea: courts generally decline to redecide issues that they have already decided. *Messenger v. Anderson*, 225 U.S. 436, 444 (1912). Law of the case thus promotes judicial efficiency by prohibiting parties from indefinitely relitigating the same issue that a court resolved in an earlier part of the case. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988); 18B Charles Alan Wright et al., *Federal Practice and Procedure* § 4478, at 648 (3d ed. 2019). As a discretionary doctrine, however, law of the case does not bar a court from reassessing an issue if it believes good reasons exist to do so (such as a change in the law or an obvious mistake). *See Pepper v. United States*, 562 U.S. 476, 506–07 (2011); *Agostini v. Felton*, 521 U.S. 203, 236 (1997). (The relevant principles are different for the so-called "mandate rule," a distinct rule sometimes associated with the law of the case that requires a lower court to follow an earlier decision of a higher court. *See Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 733–34 (6th Cir. 2019) (Sutton, J., concurring).)

But do these law-of-the-case principles apply in proceedings before the Board—an agency rather than a court? *Cf. Bridger Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 669 F.3d 1183, 1192 (10th Cir. 2012); *Biltmore Forest Broad. FM, Inc. v. FCC*, 321 F.3d 155, 163 (D.C. Cir. 2003). Because Congress created the Board to perform the tasks previously undertaken by district courts, *see Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1118 (6th Cir. 1984), the Board presumably could adopt the usual case-processing rules that courts follow. *Cf. Bryan*, 937 F.3d at 751; *Arangure v. Whitaker*, 911 F.3d 333, 343–45 (6th Cir. 2018). Indeed, since its creation, the Board has regularly invoked "law of the case" when refusing to reassess issues it resolved earlier in the case. *See Gibas*, 748 F.2d at 1116; *Dixon v. John J. McMullen & Assocs., Inc.*, 19 Ben. Rev. Bd. Serv. (MB) 243, 244 (1986) (per curiam) (citing cases); *see also Williams v. Healy-Ball-Greenfield*, 22 Ben. Rev. Bd. Serv. (MB) 234, 237–38 (1989); *McNeil v. Prolerized New England Co.*, 11 Ben. Rev. Bd. Serv. (MB) 576, 577 (1979). Be that as it may, Samons makes no claim that the Board lacks the authority to follow this procedural rule, so we need not resolve the point.

That still leaves the question whether the Board *correctly* applied the law of the case when declining to review its earlier ruling about the pulmonary-function tests. What should our

standard of review be?  Because law of the case is a discretionary doctrine, we generally review a district court's decision to stick with (or depart from) an earlier ruling for an abuse of discretion.  *See Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002).  We likely should review the Board's law-of-the-case decision under the same deferential standard.  *Cf. Star Fire Coals, Inc. v. Dir., Off. of Workers' Comp. Programs*, 792 F. App'x 372, 375 (6th Cir. 2019).  But the parties have not discussed this standard-of-review issue either, so we opt not to decide it.

We would uphold the Board's decision even under de novo review.  To establish Casey's total disability, Samons could rely on, among other things, pulmonary-function tests or medical opinions (or both).  20 C.F.R. § 718.204(b)(2).  In the first round of proceedings, the Board accepted Samons's argument that the administrative law judge failed to properly weigh the medical opinions and vacated the denial of benefits under § 718.204(b)(2)(iv).  *Samons*, 2012 WL 423892, at *2–4.  But the Board found that Casey did not challenge the judge's rejection of the pulmonary-function tests to prove total disability under § 718.204(b)(2)(i) and "affirmed" that part of the opinion on this forfeiture rationale.  *Id.* at *2 n.7.  The conclusion that Samons had forfeited a challenge based on the pulmonary-function tests *itself* became law of the case for the proceedings.  *Cf. Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 660–63, 665 (Fed. Cir. 2017); *Morris v. Am. Nat'l Can Corp.*, 988 F.2d 50, 52 (8th Cir. 1993).  And in the final round before the Board, Samons raised no arguments rooted in law-of-the-case principles as to why the Board should depart from its earlier forfeiture decision.  She, for example, did not argue that the relevant law had changed or that the Board had clearly erred in finding that she did not challenge the administrative law judge's pulmonary-function-test finding.

Samons's responses lack merit.  She claims that the Board's statement that she did not challenge the judge's handling of the pulmonary-function tests was dictum because the Board vacated the judge's disability finding on other grounds.  She adds that dicta generally cannot establish the law of the case.  *See Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 781–82 (6th Cir. 2014) (per curiam); 18B Wright et al., *supra*, § 4478, at 636.  But the Board's forfeiture conclusion counted as a holding.  The Board did not make a mere passing comment about the tests.  Rather, it noted that Samons had not challenged the conclusion that the

tests did not establish a total disability and thus "affirmed" this conclusion. *Samons*, 2012 WL 423892, at *2 n.7. And this decision "contribute[d] to" its judgment: it did not simply vacate the judge's decision outright but affirmed in part and vacated in part. *Wright v. Spaulding*, 939 F.3d 695, 701–02 (6th Cir. 2019); *see Samons*, 2012 WL 423892, at *6.

Samons next claims that the Board lacks the power to issue this type of "limited" remand in which it affirms in part and vacates in part. Reply Br. 8. According to Samons, the Board may only affirm or vacate an administrative law judge's disability finding outright. We fail to see this limit in the statutory scheme. The relevant statute allows the Board to remand "for further appropriate action." 33 U.S.C. § 921(b)(4). The relevant regulation allows the Board to remand for "such additional proceedings" and "such other action" as it directs. 20 C.F.R. § 802.405(a). This discretionary statutory and regulatory text conflicts with Samons's all-or-nothing proposition. And a remand on a narrow issue may be entirely "appropriate" in many situations. 33 U.S.C. § 921(b)(4).

Samons lastly argues that law of the case cannot apply because the parties did not brief any issues related to the pulmonary-function tests in her first appeal to the Board. The doctrine, Samons notes, applies only to issues that were actually raised and decided. *See Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016); 18B Wright et al., *supra*, § 4478, at 628. Admittedly, the Board did not resolve any merits issues related to the tests. But the Board did not apply law of the case to merits issues. It applied the doctrine to its decision that Samons had not challenged (and so had forfeited a challenge to) the judge's handling of the tests. And law of the case can apply just as much to a prior forfeiture ruling as it can to a prior merits ruling. *See Promega*, 875 F.3d at 665. Perhaps if the Board had said nothing about the tests in the first appeal, "law of the case" would have been the wrong label. *Cf. Howe v. City of Akron*, 801 F.3d 718, 740 (6th Cir. 2015); *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995); 18B Wright et al., *supra*, § 4478.6, at 785–86. Then, National Mines might have argued that Samons forfeited use of the tests by failing to challenge the judge's decision at the proper time. *See Howe*, 801 F.3d at 743. Here, however, the Board did issue a forfeiture holding and so it properly applied law of the case to that holding.

2

That said, our affirmance of the law-of-the-case ruling has a narrow effect. It means only that the Board did not commit a procedural error in the last round of proceedings by refusing to reconsider its earlier holding in the first round. But a lower court's reliance on law of the case to refuse to reconsider an earlier ruling does not bar a higher court from reviewing that earlier ruling. *See Church Joint Venture, L.P., ex rel. Chapter 7 Tr. v. Blasingame* (*In re Blasingame*), 920 F.3d 384, 392 (6th Cir. 2019). A contrary view would allow a lower court to insulate a decision from appellate review merely by refusing to reconsider it at some later point in the proceedings. *See Christianson*, 486 U.S. at 817; 18B Wright et al., *supra*, § 4478.6, at 780. And we have extended the same principle to our review of the Board's rulings. *See Dixie Fuel Co., LLC v. Dir., Off. of Workers' Comp. Programs*, 820 F.3d 833, 843 (6th Cir. 2016); *Consolidation Coal Co. v. McMahon*, 77 F.3d 898, 905 n.5 (6th Cir. 1996); *see also W. Va. Coal Workers' Pneumoconiosis Fund v. Bell*, 781 F. App'x 214, 223–24 (4th Cir. 2019) (Richardson, J., writing separately and announcing the judgment). So the Board's use of law of the case here does not prohibit us from reviewing the Board's earlier holding that Samons had forfeited any challenge to the administrative law judge's ruling on the pulmonary-function tests.

Does it matter, though, that we have jurisdiction to review only a "final order" of the Board, and the forfeiture holding came in an earlier nonfinal order? 33 U.S.C. § 921(c). Not at all. Under the Administrative Procedure Act, interlocutory agency actions merge into the final order that triggers our jurisdiction. *See* 5 U.S.C. § 704. That practice also comports with the final-judgment rule governing our review of district-court decisions under 28 U.S.C. § 1291, which likewise allows appellate courts to review most previous nonfinal orders once a district court enters a final judgment. *See Cattin v. Gen. Motors Corp.*, 955 F.2d 416, 428 (6th Cir. 1992); *cf. Youghiogheny & Ohio Coal Co. v. Baker*, 815 F.2d 422, 424 n.2 (6th Cir. 1987). True, our court once held that, even after the Board issued a final order, we lacked jurisdiction to review its earlier order vacating an administrative law judge's decision and remanding. *See Bartley v. L & M Coal Co.*, 901 F.2d 1311, 1313 (6th Cir. 1990) (per curiam). Yet *Bartley*'s logic does not apply in this case. There, the judge reversed course on remand and issued different findings before the Board entered the final order. *Id.* Here, the Board stuck with its

forfeiture ruling. Any broader reading of *Bartley* would put us at odds with the views of the other circuit courts—which have uniformly recognized that courts have jurisdiction to review rulings made in interlocutory orders once the Board issues a final order. *See Bell*, 781 F. App'x at 223 (Richardson, J., writing separately and announcing the judgment) (collecting cases). So neither law of the case nor the jurisdictional limit on nonfinal orders precludes our review of this forfeiture question.

Nevertheless, the Board correctly found that, under its claims-processing rules, Samons did not properly challenge the pulmonary-function tests in her first appeal. Congress gave the Board the authority to review only "substantial question[s] of law or fact" that a party appeals from an administrative law judge's decision. 33 U.S.C. § 921(b)(3). It did not give the Board the authority to conduct a "de novo proceeding or unrestricted review of a case brought before it." 20 C.F.R. § 802.301(a); *see Bryan*, 937 F.3d at 750. Unlike the social-security laws, therefore, the Black Lung Benefits Act places the onus on litigants in agency appeals to identify alleged errors. *Cf. Carr v. Saul*, 141 S. Ct. 1352, 1358–59 (2021). Implementing this narrow review authority, the Department of Labor requires appellants to file petitions for review that state the "specific issues to be considered" by the Board and the evidence and legal authorities relevant to those issues. 20 C.F.R. § 802.211(a)–(b). If a party flouts this rule by raising a conclusory argument or an argument that does not identify any alleged errors in an administrative law judge's decision, the Board has long held that the party forfeits any right to relief on the asserted ground. *See Fish v. Dir., Off. of Workers' Comp. Programs*, 6 Black Lung Rep. (MB) 1–107, 1–109 (Ben. Rev. Bd. 1983) (per curiam); *see also Hix v. Dir., Off. of Workers' Comp. Programs*, 824 F.2d 526, 527–28 (6th Cir. 1987); *Cox v. Benefits Rev. Bd.*, 791 F.2d 445, 446–47 (6th Cir. 1986) (per curiam).

The Board properly applied these principles here. Samons now fulsomely explains how the administrative law judge allegedly erred in rejecting her total-disability claim under 20 C.F.R. § 718.204(b)(2)(i). She argues that the judge used an inaccurate height for Casey and ignored medical opinions that accepted a pulmonary-function test that the judge rejected as invalid. Yet these arguments were nowhere to be found in Samons's first petition with the Board. In that 21-page document, Samons's counsel spent all of two sentences on the

pulmonary-function tests. The petition conclusorily noted that the test "results" "establish that there is a totally disabling pulmonary disability." Pet., R.32-4, PageID 45. It added: "[A]lthough the miner's 5/13/2003 breathing study results are just above standards required by the regulations to establish disability, the 03/17/2003 breathing study results are below disability standards and must be considered in establishing total disability." *Id.*, PageID 45–46. Samons did not challenge any of the judge's reasons why he refused to hold that the pulmonary-function tests established total disability under § 718.204(b)(2)(i). *Cf. Fish*, 6 Black Lung Rep. (MB) at 1–109. The Board thus acted within its statutory discretion by finding the judge's ruling unchallenged. *See Cox*, 791 F.2d at 446.

Citing *Smith v. Martin County Coal Corp.*, 2004 WL 6044491 (Ben. Rev. Bd. Oct. 27, 2004), Samons responds that she could not forfeit one of her current arguments. She asserts that the judge should not have relied on Dr. Fino's opinion when analyzing the pulmonary-function tests because National Mines submitted his opinion only in Casey's direct claim (not her survivor's claim) due to the limits on the number of opinions that parties may use. *See* 20 C.F.R. § 725.414. Yet *Smith* held only that parties cannot agree to exceed those limits themselves and that the judge must identify good cause for doing so. 2004 WL 6044491, at *3. The Board in *Smith* did not assert that it had a duty to catch such an error on its own initiative even if no litigant alleges it. To the contrary, the government had raised this evidentiary issue. *Id.* at *2. Here, Samons did not raise this issue in her first petition to the Board. And the issue looks nothing like the types of nonwaivable jurisdictional matters that courts must address even when the parties do not. *Cf. Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07, 510–11 (2006).

Samons also asks us to excuse her forfeiture. She cites *Jones Brothers, Inc. v. Secretary of Labor*, 898 F.3d 669 (6th Cir. 2018), for the proposition that courts may excuse a forfeiture if an agency failed to properly inform litigants about how to raise arguments in agency proceedings. But *Jones Brothers* addressed a different statute, *see* 898 F.3d at 677, and we have yet to decide whether the Black Lung Benefits Act allows courts to excuse forfeitures, *see Bryan*, 937 F.3d at 752. We need not decide the question here because the administrative process in this case was not, as Samons claims, "unclear." Reply Br. 13. For decades, a regulation has required miners and operators alike to raise specific arguments with the Board (including appropriate

factual and legal citations).   20 C.F.R. § 802.211; *see Cox*, 791 F.3d at 446.   And Samons's counsel unambiguously failed to raise her current arguments at the proper time on her first appeal.  The Board thus properly found them forfeited.

## B.  The Medical Opinions

Samons next argues that substantial evidence does not support the administrative law judge's findings about the credibility of the various physician opinions.   To recap, the judge found that Casey's usual coal-mine job required essentially heavy work: "exerting *up to* 100 pounds of force occasionally, *up to* 50 pounds of force frequently, and *up to* 20 pounds of force constantly to move objects."   Op., R.32-2, PageID 802–03.   He then noted that Drs. Dahhan and Fino (who both opined that Casey was not totally disabled) identified "quite similar" exertional levels.  *Id.*, PageID 803–05.   He stated, by contrast, that the other three physicians (Drs. Jurich, Baker, and Simpao) did not show that they accurately understood Casey's work duties.  *Id.*   According to Samons, the judge erred by finding that Drs. Dahhan and Fino understood Casey's usual coal-mine work and by misrepresenting the other doctors' views.

Although we review de novo the Board's legal conclusion that substantial evidence supported the judge's findings, *see Bryan*, 937 F.3d at 754–55, we still must reject Samons's arguments under the deferential substantial-evidence test.   A judge's factual finding is rooted in substantial evidence so long as a reasonable person might consider the evidence adequate to accept the fact.  *Greene v. King James Coal Mining, Inc.*, 575 F.3d 628, 633 (6th Cir. 2009). This deferential standard requires us to uphold a judge's finding if a rational person could have reached it, even if we believe that the record contains better evidence supporting the opposite fact.  *See id.* at 634.   And this standard extends to the types of credibility findings about medical opinions that the judge made here—which we have long treated as factual findings.  *See id.* at 635 (quoting *Dir., Off. of Workers' Comp. Programs v. Rowe*, 710 F.2d 251, 255 (6th Cir. 1983)).

Samons responds that a medical opinion will flunk even this deferential test when a doctor opines that an impairment does not prevent miners from performing their usual coal-mine work, but the evidence shows that the doctor did not know or affirmatively misunderstood the

exertional requirements of that work. *See Killman v. Dir., Off. of Workers' Comp. Programs*, 415 F.3d 716, 721–22 (7th Cir. 2005); *Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 578 (6th Cir. 2000); *Walker v. Dir., Off. of Workers' Comp. Programs*, 927 F.2d 181, 184 (4th Cir. 1991). Samons argues that this principle applies here because Drs. Dahhan and Fino identified much lighter (not "similar") work duties for Casey than the "heavy work" that the judge found.

Samons has a point with respect to Dr. Dahhan. He stated that one of Casey's prior jobs required him to lift "from 15 to 30 pounds" and another required him to lift "up to 25 pounds." Dahhan Dep., R.32-6, PageID 610. Those numbers fall well below the judge's conclusion that Casey regularly lifted up to 50 pounds and occasionally lifted up to 100.

But Samons's claim fails with respect to Dr. Fino. He testified that Casey had a "heavy labor job" that required him "to lift on a fairly regular basis more than 50 pounds." Fino Dep., R.32-6, PageID 640. He thus chose the same category of work as the judge did (heavy labor) and noted, like the judge, that Casey had to regularly lift 50 pounds. Although the judge also asserted that Casey might *occasionally* have to lift up to 100 pounds, that finding comports with Fino's statement that he *regularly* lifted more than 50 pounds. Unlike the judge, Fino did not further opine on the maximum that Casey had to lift. But his testimony is "adequate" for a reasonable person to conclude (as the judge did) that a doctor who found that Casey was not totally disabled accurately understood the exertional requirements of Casey's job. *Greene*, 575 F.3d at 633.

Samons counters that National Mines used Dr. Fino's opinion only for Casey's direct claim—not her survivor's claim—so it cannot provide substantial evidence to reject the latter claim. This fact does not change things. To begin with, the medical opinions on which Samons relied (those of Drs. Baker, Simpao, and Jurich) suffer from the same problem that allegedly disqualifies the opinions of Drs. Dahhan and Fino. As the Board explained, Samons points to no evidence showing that these physicians understood the exertional requirements of Casey's usual coal-mine work. *See Samons*, 2020 WL 729893, at *3–4. She notes, at most, that Dr. Simpao attached to his report an employment-history form listing "brattice man" as Casey's last job. Simpao Report, R.32-5, PageID 144. But Simpao did not offer his understanding of this job's

exertional levels. So the very caselaw that Samons now cites would reasonably allow the administrative law judge to reject her own evidence. *See Cornett*, 227 F.3d at 578.

In addition, the judge gave other adequate reasons to reject these doctors' opinions. In Dr. Baker's report, for example, he merely checked a box noting that Casey was totally disabled without further explanation. Baker Report, R.32-2, PageID 161. And Baker elsewhere suggested that Casey could not undertake his coal-mine work on the categorical ground that "anyone who has a dust-induced disease of the lung should avoid that dust." *Id.*, PageID 157. This statement misunderstands the total-disability definition, which considers whether Casey's impairment prevents him from physically performing his usual coal-mine work or similar work. *See* 20 C.F.R. § 718.204(b)(1). As we have repeatedly said, "a doctor's opinion advising a miner to avoid dust exposure does not constitute substantial evidence of total disability." *Eversole v. Shamrock Coal Co.*, 1994 WL 376895, at *5 (6th Cir. July 18, 1994) (collecting cases). Samons now points to other statements in Dr. Baker's report that suggest he may well have understood Casey's exertional requirements. But this debate about Baker's ambiguous report was for the administrative law judge to resolve. *See Greene*, 575 F.3d at 633–34. The judge reasonably did so.

Similarly, Dr. Simpao opined that Casey had a "moderate impairment" but did not explain how this impairment affected Casey. Simpao Report, R.32-5, PageID 141. The judge could reasonably conclude that the conclusory nature of Simpao's opinion rendered it unable to establish Casey's total disability. *See, e.g.*, *Collins v. Dir., Off. of Workers' Comp. Programs*, 1990 WL 164646, at *3 (6th Cir. Oct. 29, 1990) (per curiam); *cf. Grundy Mining Co. v. Flynn*, 353 F.3d 467, 483 (6th Cir. 2003). Citing *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254 (6th Cir. 2018), Samons responds that even a moderately impaired individual would not be able to do heavy work. Yet *Wilkerson* undermines her claim. There, we noted that a physician gave an inconsistent opinion by failing to explain how a moderately impaired miner could lift 70 pounds. *Id.* at 258. Critically, however, *Wilkerson* upheld the administrative law judge's decision to discredit this physician's opinion, noting that it was for the judge to decide how this inconsistency affected the opinion under our substantial-evidence test. *Id.* at 258–59. The same point applies here: It was for the judge to decide whether Dr. Simpao's conclusory opinion

rendered it unreliable on this total-disability question.  The judge could reasonably conclude that it did.

In sum, the administrative law judge reasonably rejected the physician opinions on which Samons relied to show that Casey was totally disabled.  Because she bore the burden of proof, her failure to establish total disability doomed her claim for benefits.

## C.  Administrative Record

Samons lastly argues that the "jumbled" administrative record prevents effective judicial review of her claims and that we should award her benefits out of the Black Lung Disability Trust Fund if not from National Mines.  Reply Br. 5.  A statute authorizes the federal government to pay a miner's benefits from this Fund when no responsible coal-mine operator exists to pay them.  26 U.S.C. § 9501(d)(1)(B); *see Karst Robbins Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 969 F.3d 316, 320 (6th Cir. 2020).  And courts have held that the Board could not put a coal-mine operator on the hook for benefits when the agency's own loss of evidence or prejudicial delay deprived the operator of a fair day in court.  *See Island Creek Coal Co. v. Holdman*, 202 F.3d 873, 883–84 (6th Cir. 2000); *Consolidation Coal Co. v. Borda*, 171 F.3d 175, 182–84 (4th Cir. 1999).  In *Holdman*, for example, the Department of Labor lost critical evidence that the operator needed for its claims on appeal.  202 F.3d at 878–79, 883.  Finding that the incomplete record was inadequate to resolve the issues that the operator raised, we agreed with the administrative law judge that the Fund must pay the benefits.  *Id.* at 883–84.

Nothing of the sort occurred here.  To be sure, the Department of Labor produced a mess of an administrative record.  The six-volume record lacked continuous pagination.  The documents were also compiled in no apparent order.  Some documents were included multiple times; others were missing altogether.  The parties thus had to supplement the record with additional documents.  Despite some difficulty, however, we could find everything necessary to review Samons's legal claims.  The record thus sufficed for our review.

We affirm.