**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

────────────

**No. 23-2310**

────────────

Dominion Coal Corporation,

Petitioner,

v.

Director, Office of Workers' Compensation Programs, United States Department of Labor; Darrell G. Meade,

Respondents.

────────────

On Petition for Review of an Order of the Benefits Review Board. (22-0524 BLA)

────────────

Argued:  December 9, 2025                    Decided:  January 15, 2026

────────────

Before DIAZ, Chief Judge, and WYNN and HARRIS, Circuit Judges.

────────────

Petition denied by published opinion.  Chief Judge Diaz wrote the opinion, in which Judge Wynn and Judge Harris joined.

────────────

**ARGUED:**  Charity Ann Barger, STREET LAW FIRM, LLP, Grundy, Virginia, for Petitioner.  Brad Anthony Austin, WOLFE WILLIAMS & AUSTIN, Norton, Virginia; David Casserly, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents.  **ON BRIEF:**  Seema Nanda, Solicitor of Labor, Barry H. Joyner, Associate Solicitor, Jennifer Feldman Jones, Deputy Associate Solicitor, Michael P. Doyle, Counsel for Appellate Litigation, William M. Bush, Attorney, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent.

────────────

DIAZ, Chief Judge:

Coal miner Darrell Meade applied for benefits under the Black Lung Benefits Act. After an administrative law judge denied his claim, the Benefits Review Board vacated the decision in part, holding that the judge hadn't adequately evaluated the evidence or explained his decision. On remand, the judge granted benefits, and the Board affirmed.

Dominion Coal Corporation now petitions for review, contending that the Board didn't apply the appropriate standard of review and the judge lacked authority to decide the case because his removal protections violate the Constitution.

As explained below, we deny Dominion's petition.

I.

The Black Lung Benefits Act "provides benefits to 'coal miners who are totally disabled by pneumoconiosis.'" *Edd Potter Coal Co. v. DOWCP*, 39 F.4th 202, 205 (4th Cir. 2022) (quoting 30 U.S.C. § 901(a)). "[I]t sets up a system both to determine eligibility for benefits and to decide who is responsible for paying those benefits." *Id.*

Because "the existence and causes of pneumoconiosis are difficult to determine," Congress "established a number of evidentiary presumptions to assist miners in proving their claims." *Island Creek Coal Co. v. Blankenship*, 123 F.4th 684, 688 (4th Cir. 2024) (citation modified). The Act creates:

> an irrebuttable presumption that the [individual is totally disabled] due to pneumoconiosis if (A) an x-ray of the miner's lungs shows at least one opacity greater than one centimeter in diameter; (B) a biopsy reveals 'massive lesions' in the lungs;

2

or (C) a diagnosis by other means reveals a result equivalent to (A) or (B).

*E. Associated Coal Corp. v. DOWCP*, 220 F.3d 250, 255 (4th Cir. 2000) (citing 30 U.S.C. § 921(c)(3)).    Evidence of one category triggers the irrebuttable presumption of complicated pneumoconiosis, *id.*, "the incurable and final stage of the disease," *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 20 (1976).

## II.

We conduct a "limited and highly deferential" review of factual findings in black lung benefits cases. *Extra Energy, Inc. v. Lawson*, 140 F.4th 138, 149 (4th Cir. 2025).

## A.

Meade, a coal miner for 37 years, applied for benefits under the Act.  A Labor Department claims examiner reviewed his application and issued a proposed decision and order, finding that Meade contracted pneumoconiosis on the job and that Dominion must pay benefits.

The administrative law judge disagreed.  The judge concluded that Meade's evidence didn't satisfy any of the requisite categories to establish the irrebuttable presumption.

First, the judge determined that Meade's chest x-rays were insufficient because most medical experts agreed they showed simple, rather than complicated, pneumoconiosis. Next, the judge ruled out the second category because "[t]here [was] no biopsy or autopsy evidence." J.A. 175.

3

Lastly, the judge determined that conflicting expert assessments about Meade's computed tomography [CT] scans didn't show complicated pneumoconiosis either. After summarizing Drs. Kim Adcock's and Kathleen DePonte's competing expert reports, the judge found the "[scan assessments] to be in equipoise" because both physicians were "well qualified to offer their views on what the . . . scans show." J.A. 178. But he concluded that Dr. Adcock's report was "more instructive than Dr. DePonte's because it provide[d] an in-depth explanation on why he determined the CT scans showed simple pneumoconiosis" and because Dr. DePonte's report offered "little in the way of explanatory language." J.A. 178.

## B.

Meade appealed to the Board.

The Board agreed with the administrative law judge that "the x-ray evidence alone d[id] not support a finding of complicated pneumoconiosis" and that "there [was] no biopsy evidence for consideration." J.A. 206–07.

But the Board reversed the judge's conclusion that Meade didn't establish complicated pneumoconiosis by "other means," reasoning that the judge's "findings d[id] not satisfy the Administrative Procedure Act" because he didn't adequately evaluate the experts' evidence. J.A. 207. The Board stated:

> The [judge] summarized [Drs. Adcock's and DePonte's] findings based on the CT scan evidence, but failed to consider their rationales and give a sufficient explanation for the weight he accorded the evidence. The [judge] must resolve the physicians' conflicting opinions on whether the nodules constitute complicated pneumoconiosis, rather than simply characterizing their reports and stating a conclusion.

4

J.A. 211.

The Board instructed the judge to "address the basis for [the competing expert] opinions and the validity of the reasons they provided for determining why [Meade] does or does not have complicated pneumoconiosis." J.A. 213. The Board added that the judge "must also adequately explain his findings in accordance with the [Administrative Procedure Act]." J.A. 213.

The Board clarified that "[i]f the [judge] finds [Meade] has not established complicated pneumoconiosis, he may reinstate the denial of benefits." J.A. 214.

C.

On remand, the administrative law judge assessed the "scan interpretations in their entirety rather than at face value alone when determining the weight to attribute to each interpretation." J.A. 220. He found that Dr. Adcock "failed to explain why [a] coalescence of smaller opacities does not result in a large opacity representative of complicated pneumoconiosis" or why an opacity measuring "almost 2 centimeters in length" didn't qualify.[1] J.A. 221.

In contrast, the judge found that Dr. DePonte "persuasively outline[d] the measurements of the smaller nodules and explain[ed] how they coalesce to form a large

---

[1] Medical experts "generally diagnose[] [pneumoconiosis] on the basis of [x]-ray opacities indicating nodular lesions on the lungs of a patient." *Usery*, 428 U.S. at 7. Where x-ray evidence doesn't show complicated pneumoconiosis, a claimant can rely on alternative methods of diagnosis, like scans of his "lungs show[ing] at least one opacity greater than one centimeter in diameter." *E. Associated Coal Corp.*, 220 F.3d at 255 (citing 30 U.S.C. § 921(c)(3)).

5

opacity meeting the definition of complicated pneumoconiosis." J.A. 221. Because he found "the weight of the evidence support[ed] a finding of complicated pneumoconiosis," the judge awarded benefits. J.A. 223.

### D.

This time, Dominion appealed.

It contended that "the Board erroneously reversed the [administrative law judge's] prior denial of benefits, and the [judge] erroneously failed to make an equivalency determination and substituted his own medical judgment to discredit [Dominion's] experts." J.A. 235. Dominion also argued that the administrative law judge had no authority to decide the case because limitations on the President's power to remove him violated the separation of powers.

The Board denied Dominion's appeal.

It explained that the administrative law judge's first order failed to grapple with the "scan evidence and properly explain why he concluded [Meade] did not establish complicated pneumoconiosis." J.A. 274. The Board added that its remand instructions didn't bind the judge's decision and that Dominion "ha[d] not shown that the Board's prior holding was clearly erroneous." J.A. 274.

Turning to the second order granting benefits, the Board concluded that substantial evidence supported a finding of complicated pneumoconiosis. The Board stated that "the [judge] permissibly concluded Dr. Adcock's overall rationale was unpersuasive as the regulations do not preclude a finding of complicated pneumoconiosis based on the location

6

of large opacities in the lung pleura" and because he didn't accurately account for the nodule's length. J.A. 278–79. The Board also rejected Dominion's constitutional claim.

This appeal followed.

III.

We begin by confirming our jurisdiction over the Board's initial remand—an interlocutory order. *See Clark v. Cartledge*, 829 F.3d 303, 305 (4th Cir. 2016) (recognizing obligation to consider jurisdiction sua sponte).

The Black Lung Benefits Act allows us to review a "final order." 33 U.S.C. § 921(c); 30 U.S.C. § 932(a). In an unpublished opinion, we gave two reasons why the Act also grants jurisdiction over interlocutory orders. *See W. Va. Coal Workers' Pneumoconiosis Fund v. Bell*, 781 F. App'x 214, 222–23 (4th Cir. 2019). First, we explained that the Administrative Procedure Act explicitly states that "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." *Id.* at 222 (quoting 5 U.S.C. § 704). Second, we pointed to other jurisdictional statutes, including for final decisions of district courts, 28 U.S.C. § 1291, that permit review of interlocutory orders because they "are said to 'merge' with the final judgment." *Id.* at 223.

We also noted in *Bell* that several circuits have concluded that "interlocutory Board orders become reviewable once a final order [issues]." *Id.* And since *Bell*, the only outlier court has moved closer to its sister circuits' position, holding that it has jurisdiction over

7

some interlocutory Board orders. *See Samons v. Nat'l Mines Corp.*, 25 F.4th 455, 465–66 (6th Cir. 2022).

For the reasons articulated in *Bell*, and given the near consensus among the circuits, we hold that we have jurisdiction over the Board's interlocutory orders after it enters a final order.

## IV.

Now to the merits.

### A.

We apply "the same standard the Board [does] when reviewing an [administrative law judge's] decision." *Extra Energy*, 140 F.4th at 146. "That standard is de novo for legal conclusions but highly deferential for factual findings." *Id.* (citing *Am. Energy, LLC v. DOWCP*, 106 F.4th 319, 330 (4th Cir. 2024)). "We will not disturb [a] factual finding, 'even if we disagree with it, provided the determination is supported by substantial evidence.'" *Id.* (quoting *Am. Energy*, 106 F.4th at 330).

Yet "our deference to . . . factual findings is not unlimited." *Island Creek Coal*, 123 F.4th at 690. "In [deciding] whether substantial evidence supports [an administrative law judge's] factual determinations, we must first address whether" the judge analyzed "all of the relevant evidence." *Id.* (quoting *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528) (4th Cir. 1998)). If the judge "has incorrectly weighed the evidence or failed to account for relevant record evidence," we don't defer to his findings. *Id.* at 690–91 (quoting *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 253 (4th Cir. 2016)).

8

"Furthermore, as a condition to appellate review, an [administrative law judge] must 'adequately explain why he credited certain evidence and discredited other evidence.'" *Addison*, 831 F.3d at 253 (quoting *Milburn*, 138 F.3d at 533). "Although this requirement is not intended to be a mandate for administrative verbosity, a reviewing court must be able to discern what the [judge] did and why he did it." *Id.* (citation modified).

## B.

We first consider Dominion's appeal of the Board's interlocutory order.

Dominion contends that the judge's order denying benefits "was conclusive on the Board" because "[i]t is an [administrative law judge's] responsibility to weigh the evidence and make credibility determinations." Appellant's Br. at 20–21. And says Dominion, because "[t]he [judge's] opinion was not irrational or unlawful," the Board erred by not deferring to it. *Id.* at 27.

Dominion misreads the standard of review. The Board's review is highly deferential, but it's not toothless. When an administrative law judge hasn't considered relevant evidence, weighed it correctly, or explained his conclusions, the Board need not defer. *See Island Creek Coal*, 123 F.4th at 690–91.

The Board here concluded that the judge failed to consider the substance of the medical experts' conflicting scan assessments and to "give a sufficient explanation for the weight he accorded the evidence." J.A. 211. So it then instructed the judge "to address the basis for [the experts'] opinions and the validity of the reasons they provided" and to explain his conclusions on remand. J.A. 213. But the Board didn't reweigh the evidence or make factual findings.

9

Nor did the Board require the judge to conform to its view of the evidence. Rather, the Board emphasized that its remand wasn't an instruction to reverse: "If the [judge] finds [Meade] has not established complicated pneumoconiosis," it said, "he may reinstate the denial of benefits." J.A. 214.

Because the Board remanded for the judge to evaluate all the evidence and explain his reasoning, we decline to disturb its interlocutory order.

C.

Next, we turn to Dominion's appeal of the Board's final order.

Here, Dominion does an about-face and says that the Board's final order didn't sufficiently scrutinize the judge's findings. The judge credited Dr. DePonte's scan interpretations over Dr. Adcock's and found complicated pneumoconiosis on that basis. But according to Dominion, the judge ruled inconsistently with Labor Department regulations when he stated that Dr. Adcock hadn't adequately explained why a coalescence of smaller opacities doesn't constitute a large opacity representative of complicated pneumoconiosis. Dominion contends that a "coalescence of several large opacities can be classified" as complicated pneumoconiosis as long as "each opacity [is] larger than 10 mm," but because small opacities "by definition are smaller than 10 mm," a coalescence of them can't constitute complicated pneumoconiosis. Appellant's Br. at 34 (citing Labor Department chest radiographs (x-rays) regulation, 20 C.F.R. § 718.102).

But the relevant regulations—specifically Section 718.102—don't contain the text quoted in Dominion's brief, and Dominion hasn't provided another citation. The Federal Rules of Appellate Procedure require "citations to the authorities . . . on which the

10

appellant relies," Fed. R. App. P. 28(a)(8)(A), and "[f]ailure to comply with the specific dictates of this rule with respect to a particular claim triggers abandonment of that claim on appeal." *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999).

Dominion refers to, without citing, "International Labour Organization (ILO) Guidelines, revised edition 2011." Appellant's Br. at 33. Perhaps Dominion means to quote the International Labor Organization's 2011 Guidelines for the International Classification of Radiographs of Pneumoconioses, which are referenced in Section 718.102(d)(1)(i) and incorporated at Section 718.5(d)(1) of the regulations. But that source doesn't say what Dominion claims: that "a coalescence of small opacities" are by definition "smaller than 10 mm." Appellant's Br. at 34. The Guidelines classify small opacities as those with diameters "up to about 10 mm." Int'l Lab. Org., *Guidelines for the Use of the ILO International Classification of Radiographs of Pneumoconioses*, Occupational Safety and Health Series No. 22, at 5, (Rev. 2011).

Dr. Adcock explained that Meade's overall coalescence of opacities measured 20 mm in length, meaning that one or more of its parts could have been about 10 mm. And Dr. Adcock didn't show otherwise because he didn't measure each opacity's length. *See* J.A. 221 (administrative law judge opinion stating Dr. Adcock "failed to explain why this coalescence of smaller opacities does not result in a large opacity representative of complicated pneumoconiosis"); J.A. 279 (Board stating same). Nor does the Guidelines definition of a Category A large opacity support Dominion's argument, *see* Appellant's Br. at 34, since this definition refers to the sum of the dimensions of all large opacities found in a scan, rather than a coalescence of opacities.

11

Next, Dominion maintains that the Board erred in permitting the administrative law judge to discount other medical opinion evidence. But the judge assessed the three opinions and determined that they merely parroted Drs. Adcock's and DePonte's conflicting scan assessments. The judge explained and applied this reasoning consistently to Dominion's and Meade's outside medical experts and concluded that the "evidence neither establishes nor refutes the existence of complicated pneumoconiosis." J.A. 222.

Because the judge permissibly relied on Dr. DePonte's scan interpretations, we find that substantial evidence supports the final order.

## V.

Finally, we assess Dominion's constitutional claim.

Dominion contends that because the President can remove members of the Merit Systems Protection Board but only the Board can remove administrative law judges, the judge in this case has "dual-layer tenure protections [that] violate the separation of powers doctrine." Appellant's Br. at 38; 5 U.S.C §§ 1202(d), 7521(a).[2] Dominion argues that the "removal protections are unconstitutional [because] they insulate [the judge] from the President's control and oversight." Appellant's Br. at 40. Dominion would have us remand

---

[2] Dominion didn't make this argument consistently below. It briefly nodded to it in a motion filed the first time the judge considered the case and didn't raise the issue again until its second appeal to the Board. But neither the Labor Department nor Meade argue that Dominion forfeited its removal protections claim, so they have "forfeited any such forfeiture argument." *United States v. Newby*, 91 F.4th 196, 200 n.* (4th Cir. 2024).

the case "for a new hearing before [a judge] whose removal protections do not violate the separation of powers doctrine." *Id.*

But we've already rejected such a claim. In *K & R Contractors v. Keene*, we explained that a litigant can't "have the underlying agency action set aside absent reason to believe that the unconstitutional removal provision itself inflicted harm." 86 F.4th 135, 149 (4th Cir. 2023) (citing *Collins v. Yellen*, 594 U.S. 220 (2021)).

We set out two examples of such harm: 1) where a President attempts to remove an administrative law judge but the removal protections bar it, or 2) where a President expresses desire to remove such a judge but acknowledges he can't due to the protections. *Id.* (citing *Collins*, 594 U.S. at 259–60). Dominion alleges no such harm, and there's no evidence that the President tried to or expressed a wish to remove the judge here.[3]

Citing *McMellon v. United States*, Dominion contends that because the *Keene* court didn't reach the removal protections issue, "any opinion on the issue would not be in conflict," and we aren't bound by it. Reply Br. at 8 (citing 387 F.3d 329, 334 (4th Cir. 2004)). But *McMellon* is inapposite in this context because there aren't conflicting opinions that we must decide between. 387 F.3d at 333–34.

Two years ago, we held that a party "is not entitled to vacatur" of a Board order unless it shows the removal provision harmed them. *Keene*, 86 F.4th at 149. Because the

---

[3] Last year, we rejected Dominion's same argument for the same reason. *See Dominion Coal Corp. v. Clark*, No. 22-1858, 2024 WL 1905047, at *1 (4th Cir. May 1, 2024).

13

record before us doesn't show such harm and there is no conflicting authority, we are bound

to follow *Keene*.

*PETITION DENIED*

14